## Adams *against* Easton.

It is incompetent for a party to give parol evidence of the return of a survey with-out previously showing that an ineffectual search had been made for it in the land office.

A deposition taken on behalf of the plaintiff, upon a notice directed by mistake to the *plaintiff*, or his attorney, although served upon the defendant in interest, cannot be read in evidence.

ERROR to the common pleas of *Westmoreland* county.

Ignatius Adams against Henry Easton and others. This was an action of ejectment for seventy-five acres of land on the summit of the Allegheny county. The facts of the case are particularly stated by the court below, in their charge to the jury, and which exhibits the points which were argued in this court. During the progress of the trial, the defendants offered to prove, by a witness, that he returned the survey under which the defendant claimed, to the surveyor-general. The evidence was objected to, but the court overruled the objection, and permitted the evidence to be given. Plaintiff excepted.

The plaintiff offered in evidence the deposition of Richard Shirly, which was taken upon a notice signed by the plaintiff's attorney, and directed " to the plaintiff within named, or his attorney," and which was proved to have been served on Jackson, one of the defendants. The evidence was objected to by the defendant, and rejected.

The counsel for the plaintiff requested the court to charge the jury on the following points:

1st. The jury are the judges, and are to decide, from the evidence, the question of abandonment.

2d. An improvement may be abandoned, and slight circumstances may be sufficient to prove it.

3d. If Maguire entered, as testified to by Cassiday, under his father, and sold his improvement-right to Haynes, it was competent for Haynes to abandon the improvement; and if he never went on the land; if Shaw resided upon it but one season, and Haynes declared that he never would take possession of it, and neither paid the taxes, nor continued the improvement himself, or by others under his authority, the jury have a right to presume it abandoned.

4th. If the jury believe that Haynes abandoned his improvement,

[Adams v. .Easton.]

and if Adams entered upon the land subsequently thereto, and before the survey under Haynes's warrant, and has continued to occupy and improve ever since, his title is preferable to the title under the warrant, and the claimants under the warrant must be postponed; the title, under such a state of facts, being clearly in Adams.

5th. That Adams had a right to claim, under his improvement, four hundred acres, to be laid out in a convenient form, so as to embrace his improvements; and if he did not circumscribe his boundaries by survey, the jury are to judge from the facts as to what was the extent of his claim.

6th. That if Haynes retransferred to Maguire the improvement right which he purchased from Haynes, (Maguire,) the application made by Maguire, as certified by two justices, was a fraud upon the commonwealth, as the said Maguire was not competent to testify as to the commencement of his own improvement, for the purpose of obtaining a warrant; and that under such circumstances no title can vest under the warrant previous to the date of the survey.

7th. It is the business of the owner of a warrant not only to have a survey made, but to have it returned. The payment of fees and the return of a survey are but facts to repel the presumption of abandonment. If the survey made under the warrant of Haynes was not returned until 1830, a period of twenty-three years after the survey was made—if Adams, in the mean time, entered, and improved, and claimed the land in dispute, as within his boundaries, the return of survey, as testified to by Mageehan, confers no title upon those claiming under the warrant of Haynes.

8th. The jury have a right to infer, from all the circumstances in the case, that Haynes had abandoned his warrant and improvement; and the claimants under that warrant, if so abandoned, have no title. There is no legal principle that can prevent the jury from deducing a presumption of that kind from the testimony.

9th. The act of limitations is a complete bar to the title set up by the defendant. If the jury believe that Adams entered twenty-one years ago, before any entry on the part of any one claiming to hold under Haynes's title, and that neither Haynes nor any other person for him paid the taxes during that time, but permitted Adams to pay the taxes, or part thereof, for the whole time, under such circumstances the jury are authorized to presume that Haynes was ousted, and that his title is barred by the act of limitations.

10th. There is no proof of any acceptance of the return of the deputy surveyor by the surveyor general previous to the 5th of June 1830, and the presumption is against the return testified to by Meloy having been accepted in the land office; the defendants having produced no evidence of such acceptance, nor any proof tending to show that the original return had been lost in the surveyor general's office.

11th. That if they believe the survey of O'Keefe upon the warrant

VI.—3 H

in the name of John Haynes was not accepted by the surveyor general in 1807, the claim of those holding under the Haynes warrant is postponed until the same was accepted in 1830.

Young, president. The plaintiff claims the land in question under a warrant dated the 15th of January 1835, upon which a survey was made on the 16th and 17th of March following, embracing four hundred and six acres, ninety-one perches and allowance, at plaintiff's risk and request, according to a draft made by Mr O'Keefe, the deputy surveyor, in which the interfering surveys of James Kinnear, in part of the seventy-five acres claimed by the defendants, are laid down. The plaintiff's warrant is for four hundred acres, including an actual settlement and improvement commencing from the 1st of September 1805. The plaintiff, after exhibiting the warrant and draft of survey, with a receipt for the purchase money and office fees, rested his claim without offering any testimony of the actual settlement and improvement stated in his warrant; his counsel admitting that unless they would be established, the plaintiff would not be entitled to recover; but that this would be done in the course of the trial, after the defendants' evidence of title. The defendants have exhibited a warrant in the name of John Haynes, dated the 18th of March 1807, for seventy-five acres, including his improvement, commencing on the 1st of August 1801, with the draft of a survey made in pursuance thereof on the 4th of May 1807, containing seventy-five acres and allowance. Thereupon testimony was adduced to show the commencement of that improvement. According to that of James Mageehan he assisted James L. Maguire in August 1801. Some trees on an acre or two were chopped down. John Adams testified that he helped James L. Maguire to cover a little cabin, roll some logs, and clear some rubbish: two or three acres cleared: and that William Shaw some time after moved into the cabin. Article of agreement between James Maguire and John Haynes, by which Maguire agreed to sell Haynes seventy-five acres.

By inspection of the articles it appears that the quantity sold was one hundred and fifty acres, which were scored out and seventy-five interlined. By the testimony of Mr Mageehan, he made a survey, a draft of which has been produced, containing seventy-five acres, including the improvement of Maguire. This was on the 3d of September 1803, intended, probably, as a designation of the boundaries of the land sold by the articles. According to the testimony of William Shaw, he moved on the land in the month of October 1803, and of the improvement cleared by John Adams, moved into the cabin he had helped Maguire to cover some time before; and, according to his testimony, resided there until 1808 or 1809, but as Peter Cassiday testified, eight or nine years altogether. How much land he cleared and cultivated during that period, has not very distinctly been made to appear; but it appears the land was hard to clear, and not of a very good quality; and Haynes

[Adams v. Easton.]

himself, when he left the country, some time afterwards, no doubt, after he had taken out the warrant in 1807, and went to the state of Ohio, set but little value on it, and offered to dispose of it for a small sum. Shaw, the tenant, who cleared some land over the line of the seventy-five acres, would not, or could not purchase at the small price Haynes was willing to accept. After Shaw left it, who occupied the land in question (the seventy-five acres) for a long time, eighteen, nineteen or twenty years, has not been distinctly shown. Until about the year 1829 or 1830, when the route was laid out for a railroad to connect the canals east and west, the land lay vacant; and if the defendant stood only on the improvement made first by Maguire, and carried on for six, seven, or even nine years by Shaw, an abandonment ought to be presumed. So also if the cause rested on the warrant alone. But when this has been actually executed by a survey on the ground, and that returned into the office of the surveyor general within a reasonable period, the proof of an abandonment of the title thus acquired ought to be very strong. The defendants have proved by Mr O'Keefe, that the survey was actually made according to his certificate, and transmitted by Mr Meloy the summer following, and Mr Meloy deposed that he delivered the return to a clerk in the office in the presence of Mr Cochran, the surveyor general, who examined it. When called this afternoon, Mr Meloy stated that the clerk said, on looking at the draft, that it was not correct, and the lines would not close. By comparing the lines made by Mageehan in 1803, and those of Mr O'Keefe in 1807, it appears they nearly correspond, both as to courses, and distances, and corners. If there was, in fact, any mistake as to closing, which, by the by, has not been made to appear, it would have been competent for the surveyor general to correct it; and if not, I am of opinion he ought to have pointed out the error to Mr O'Keefe, by writing to him, remitting the return by Mr Meloy, the bearer of it, for that purpose. There is no testimony tending to show that Haynes was ever apprised of this alleged error of calculation, that he might take the requisite measures to have it set right. As it was not returned through Mr Meloy or any other person, it ought to be considered as left in the office, but has been lost since by carelessness, or the removal of office papers from one place to another, as they were from Lancaster to Harrisburg. There is no testimony that the plaintiff ever entered on the seventy-five acres in dispute: that he claimed that part by virtue of some improvement made on land within a short distance of it—some of the witnesses suppose about a quarter of a mile—and that he was dissatisfied with Shaw, the occupant under Haynes, has been proved. But you find he also claimed by improvement, three other tracts in the same neighbourhood; and if you believe some of the witnesses, other tracts still further off; and according to Mr Cassiday, had two adjoining tracts surveyed upon two of his improvements, and the third also on improvement, when the line or lines of the seventy-

[Adams v. Easton.]

five acres surveyed on Haynes's warrant was pointed out to him, and were then, according to the testimony of Mr Cassiday, excluded. It would seem, that after the lapse of some time, he changed his mind. It appears, from the record, that Haynes brought an eject-ment against Hugh Conrovy and others, for this very land; and instead of becoming a party to the cause, or setting up a title to it by virtue of his improvement, he was adduced as a witness at the trial, and gave testimony. The improvement called for by the plaintiff's warrant relates to the 1st of September 1805, between three and four years after the commencement of the improvement by Maguire, and between a year and two years after Shaw had been settled on the ground. You will next take into view what was the extent of the improvement made by the plaintiff. There was a cabin without chimney, or door, or window, and one acre or two cleared, and a small quantity of ground cleared on which a little rye had been sowed—one witness computes half a quarter of an acre, another more, injured by weeds. It is difficult to conceive how this can have the weight due to a settlement. By this, the legislature have declared, shall be understood an actual personal resident settlement, with a manifest intention of making it a place of abode, and the means of supporting a family, and continued from time to time, unless interrupted by the enemy. The cabin of the plaintiff, called by some a shanty, appears to have been raised with no such intent, but rather a shelter, during the times he might be engaged in digging coal at a bank near it, where Shaw himself occasionally procured coal, if you believe the testimony of some of the witnesses. To support the claim of the plaintiff by actual set-tlement, testimony has been given that he made another improve-ment at a much later period; but wherever else he might have resided, (and until after his return from a militia tour in 1814,) it does not appear that he had any actual personal resident settlement on this second place, until after his return from that tour of duty. It appears he has since cleared a good deal there, and there resided with his family. The defendants' warrant and survey were long before this; not less than seven years. If he had inquired of Mr O'Keefe, the county surveyor, or any other who might have held the office, he could have acquired full information of both. He might have acquired this by causing a search in the land office at the seat of government. Whether, if he had caused such an inquiry, the return of survey could have been found, is uncertain indeed. It might have been lost; but if it was deposited in the office in case of an error in calculation by the deputy, which might have been corrected by the surveyor general, or returned for that purpose to Mr O'Keefe, this ought not to operate to the prejudice of the owner of the tract, who knew nothing of this error: an abandonment, therefore, of his legal title, ought not to be presumed. But you, taking into consideration all the evidence, are the judges to decide upon this point. I have already said, that a mere equitable claim,

[Adams v. Easton.]

depending on improvement alone, and even settlement, may be presumed much more readily than the other.

As to the points made for plaintiff, my opinion on them, so far as I have been able to decipher the hand writing by candle light, the answers to them, have been, I hope, substantially given in what I have just said to you. On the whole, I conclude with observing, that neither Haynes, nor any claiming under him, ought to be presumed to have abandoned their right. Also, that they are not concluded from recovering the possession by the limitation act. As to the acceptance of the survey, there does not appear any formal one, until June 1830. This was that of Mr. Lloyd, who certifies, that he had examined it, and as it entirely corresponds with that of Mr. O'Keefe, a presumption arises of no incorrectness whatever, in the survey itself, and in fact, no evidence has been given of any incorrectness. This ought, therefore, to have little, or rather no weight under all the circumstances of this case. I had almost forgotten to take notice of the plaintiff's claim, on account of taxes, for most years, since the year 1808, in some instances for a tract of four hundred acres, in others for eight hundred acres, and in one of the years twelve hundred acres, but whether those different assessments included the seventy-five acres, is altogether uncertain. It would rather seem, that they did not, if you believe the testimony of Peter Cassiday, of his having claimed three different tracts, of not less than four hundred acres each, by virtue of his improvements only. He has pointed out the lines of the whole three tracts, as they were laid off in December 1829, and contain more than twelve hundred acres, excluding the seventy-five acres in question. Allured by the great rise in the value of property in that quarter, he has instituted the present suit, returnable to June term last year; I have stated the substance of the testimony adduced by both parties, and given my opinion on the whole. You will now retire to form your own judgment of it. If I have inadvertently been mistaken, as to any of the legal points propounded on the part of the plaintiff, it wtll be in his power to have the opinion given, reviewed, and if found erroneous, the cause will be remanded for a new trial.

To which opinion of the court, the counsel for the plaintiff excepted. Verdict for defendant.

Errors assigned.

1st. The rejection of the testimony stated in the plaintiff's bill of exceptions.

2d. The omission of the court to give any reply to the points propounded by the plaintiff's counsel, from No. 3 to No. 8, inclusive.

3d. The answers to those points, so far as they can be found in the charge, are inconclusive and unsatisfactory, and erroneous.

4th. There is error in the answer to the ninth point made by

[Adams v. Easton.]

plaintiff's counsel.    1st. That it is not answered.    2d. That if answered, the answer is evasive.    3d. That the law in reference to it, so far as the court have purported to lay it down, is not correctly stated.

5th. There is error in the answer given by the court to the tenth point made by plaintiff's counsel.

6th. The court have declined answering the eleventh point made by plaintiff's counsel.

7th. The court erred in taking from the jury the question of abandonment.

8th. The court erred in giving contradictory opinions as to who were the judges of the question of abandonment, and in charging, and in instructing the jury, that neither Wagoner, nor any claiming under him, ought to be presumed to have abandoned.

9th. The court are in error in the law as stated, arising under the statute of limitations.

*Shaler*, for plaintiff in error.
*Stannard*, for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—Ejectment for seventy-five acres of land in Cambria county, situate on the summit of the Allegheny mountain, where the railroad crosses.    The plaintiff claimed under a warrant, dated the 15th of January 1835, calling for an improvement on the 1st of September 1805.    The defendants claimed under a warrant to John Haynes, for the seventy-five acres by description, dated the 18th of March 1807, and calling for his improvement, commencing on the 1st of August 1801, on which the purchase money was paid on the 18th of March 1807, and a survey made on the 4th of May 1807.    Much evidence was given as to the dates of the respective improvements of the parties, and other matters connected with their titles, for which I refer to the charge of the court below to the jury, which contains a detail of them.    It is unnecessary to recapitulate the various errors assigned in the charge of the court, in respect to the law, because we are of opinion that the plaintiff's points were, in the charge of the court, substantially and properly answered, except in what relates to the return of the survey in 1807, which depended upon the evidence given by James Meloy on that subject.    We are of opinion, that the evidence of James Meloy was improperly received, and that the judgment must on that ground be reversed.

It appears, that the survey of the 4th of May 1807, on the Haynes warrant, was made by William O'Keefe, deputy surveyor, who testified, that he had sent down the return of survey to the surveyor-general, by James Meloy, in July 1807.    The defendants offered James Meloy as a witness, to prove that he returned the

[Adams v. Easton.]

survey in the name of Haynes to the surveyor-general. The plaintiff objected, the court received the evidence, and exception was taken.

The objection to the evidence offered, is, that the defendants had not previously shown a search for this survey in the land office, and we think it well founded. A survey returned to the land office, becomes matter of public record, and the best evidence of its existence and character, is the return itself, or a certified copy under seal of office. Parol evidence of such return is but secondary, and admissible only where search has been made in the proper office, and the return cannot be found; and for this purpose the certificate of the proper officer has been held admissible. 4 *Serg. & Rawle* 174; 14 *Serg. & Rawle* 375. Here no such preliminary proof was given: and *non constat*, but that, if the office were examined, the return of survey would appear, and its character be at once satisfactorily ascertained. It might also appear, whether it was rejected or not at the land office: a matter of importance in this suit, apparently much litigated by the parties, and which, as appears by the charge of the court, afterwards came to depend on presumptions and conjectures. If the return cannot be found, then, from necessity, evidence may be resorted to, to prove the facts and the circumstances in relation to it. What inferences would be properly deducible from such parol evidence, it would be improper to anticipate now, because the question may not occur again, and if it should, it may be connected with other circumstances besides those in the case at present.

In the rejection of the deposition of Richard Shirley, we think the court below was right. The notice signed by the plaintiff's attorney, and served upon Jackson, the party in interest, was directed " to the plaintiff or his attorney." This appears to have been a clerical error—but it was calculated to mislead the defendant.

Judgment reversed, and a *venire facias de novo* awarded.