[Sunbury, July 3, 1829.]

## ROBESON and others *against* GIBBONS.

### IN ERROR.

A subsequent survey cannot affect a prior one, regularly made and returned; and if the court be requested by counsel to charge the jury to this effect, and refuse to do so, it is error.

The omission to charge the jury that a delay in bringing suit for any time short of that prescribed by the statute of limitations, is not a bar to the suit, when requested by counsel to do so, is error.

A connected draught from the surveyor general's office is evidence, not to make title, but to show whether there are any, and what interferences.

Error to the Court of Common Pleas of *Union* county.

Ejectment for three hundred acres of land or thereabouts, bounded by lands late of *Charles Hall,* and others.

The plaintiffs in error who were also plaintiffs below, were the heirs of *William Bonham,* deceased, and on the trial, after having given in evidence a warrant dated *September* 28th, 1773, in favour of *David Emerick,* for one hundred acres, and another, dated *May* 4th, 1774, in favour of *David Emmarts,* for one hundred and fifty acres, they offered a certified paper dated *May* 13th, 1828, purporting to be a connected draught of two surveys in the names of *David Emerick,* and *David Emmarts;* and also a return of survey certified in the same manner, being an extract from the surveyor general's book of *March* 8th, 1774, to which the defendant's counsel objected. The evidence was overruled, and the plaintiffs took a bill of exceptions.

(Robeson and others *v.* Gibbons.)

The title under *Emerick's* warrant was conveyed to *Bonham,* who, on the 4th of *February,* 1824, obtained a patent.

The defendant's title was founded upon an application of *William Gibbons,* dated 31st of *March,* 1809, referring to an improvement of *March,* 1802; a warrant dated *May* 27th, 1809, but which was not produced, and a return of survey of *August* 2d, 1809.

The plaintiffs' counsel submitted to the court certain propositions on which they requested the jury might be instructed.

These propositions, and the answers given to them by the court, were as follows:—

1st. That the official draft of survey and return, and the patent to *William Bonham,* on the warrant in the name of *David Emerick,* are strong evidence in the plaintiffs' favour, that their survey was actually made upon the ground as represented by that draught; and unless the jury find strong evidence that the survey was made differently, they are conclusive proofs that it was made as that draft shows it.

*Ans.* To this the court assent, but those are facts for the jury.

2nd. That if the jury believe the testimony of *John Lloyd* and *Joseph Stillwell,* respecting the lines of *Emerick,* they were made according to his official draft, and they include the buildings and improvements, of which Gibbons is in possession, and the plaintiffs' official title is the best, if the survey was so made.

*Ans.* The plaintiffs' title is the best, if his survey includes any of the defendant's land. As to the testimony of *John Lloyd* and *Joseph Stillwell,* it is for the jury to determine. Whether their testimony proves that *Emmerick's* survey does include the buildings and improvements which *Gibbons* is in possession of, is for the jury to determine from all the evidence.

3rd. Whether the official survey of the defendant, the lines dotted upon it for *Emerick,* or any thing else upon it is evidence, or strong evidence, that the plaintiffs' survey was not made as represented by their official draught, in the name of *Emerick,* as sworn to by *Stillwell* and *Lloyd?* And whether there is any evidence whatever, against the existence of the plaintiffs' survey as returned?

*Ans.* The defendant's survey returned, is *prima facie* evidence, that the survey was made agreeably to the return. The plaintiffs' survey and return are also *prima facie* evidence, that their survey was made agreeably to the return of survey, and if the jury find there is any interference, the plaintiffs would be entitled to the land within their own lines, unless the defendant can hold by the statute of limitations: and whether the surveys were agreeable to the official draft is a fact for the jury.

4th. That unless the defendant has had an exclusive adverse possession for twenty-one years before this ejectment was instituted, the limitation act does not protect him. That the possession must

(Robeson and others *v*. Gibbons.)

also have been enclosed during that time, and without interference, and that if both *Bonham* and *Gibbons* were in possession of the interfering parts of the survey, the elder and superior title of plaintiff is to hold all the lands, excepting what *Gibbons* had so actually enclosed for twenty-one years, if any there is.

*Ans.* To this the court assent: an actual occupancy with definable boundary, without fencing, would be sufficient to hold by the statute of limitations so far as he had actually occupied for twenty-one years, before the commencement of the plaintiffs' action; but constructive possession will not do where there are two adjoining tracts, as in this case, each holding a legal estate under the commonwealth, and there is an interference of lines; the land belongs to him who has the oldest and best title. In this case if the jury believe that there is an interference, the land belongs to the plaintiffs who have the best title, so far as the defendant has not been in the actual occupancy with definite boundaries for twenty-one years before the commencement of this action. It is immaterial whether these boundaries are a fence, or a ditch, or a hedge, or the land is surrounded with brush, so that there are actual definite boundaries.

5th. Whether the plaintiffs are barred in equity, from recovering, by any improvements of the defendants' and *Bonham's* delay to bring his ejectment?

*Ans.* He is not—But *Bonham* suffering *Gibbons* to patent and pay for his land, and make valuable improvements, without entering his *caveat*, or claiming the land, is strong evidence that *William Bonham* in his life time did not claim the land in possession of *Gibbons*.

The errors specially assigned in this court were:—

1st. The rejection of the evidence stated in the first bill of exceptions.

2nd. In the answers given by the Court to the points made by the plaintiffs' counsel on the trial.

The cause was argued in this court by *Bellas* for the plaintiffs in error, and *Greenough* for the defendants in error.

The opinion of the court was delivered by

Huston, J.—The plaintiffs here were plaintiffs below, and showed a warrant in 1773, and another in 1774; also a survey on *Emerick's* warrant, (the one in question,) returned into the surveyor general's office in 1774, and a patent. They also proved that the lines of the survey in question were on the ground, agreeably to the return of survey, or at least three of them, and that the defendant was residing within those lines. The defendant showed a warrant in 1809, founded on an improvement in 1802, a survey in 1809, and a patent in 1812. Much testimony was given as to the defendant's improvement: whether his original improvement was within the plaintiffs' survey; whether it had been duly followed up; when and how he got into possession where his present

(Robeson and others *v.* Gibbons.)

house is.   All this was matter to be decided by the jury.   Several
points of law were proposed by the counsel, on which the court
were requested to give opinions, and opinions were given.   We do
not see any error in these, on giving the opinions a fair construc-
tion, except the third.   It has happened in this case, as in many
others, that the propositions submitted to the court are not expressed
in the most definite manner, and it is not certain that the court un-
derstood some of them in exactly the same manner that he who
wrote them did.

It is usual and proper for a deputy surveyor to note on his
draft of return of survey the names of the older surveys which the
one then returned adjoins.   The deputy in this case was an excel-
lent and accurate officer.   In the draft of the defendant's survey,
he notes on the outside of one line, that it adjoins *D. Emerick*,
(the plaintiffs' warrant,) and by dotted lines shows what he sup-
posed to be the length of *Emerick's* line, which the defendant ad-
joined, and the course of the other lines of *Emerick*, running off
from that line.   The defendant having insisted on these marks
on his own survey, designating, as he supposed, the plaintiffs'
claim, the court were asked to charge the jury, as to whether
this draft of the defendant's, and what was written on it, were evi-
dence, or strong evidence, that the plaintiffs' survey was not made
as represented by the return, under seal, and as the lines are
proved to be on the ground.   The answer does not meet the point;
in fact, there is no answer.

It is not supposed that a deputy surveyor, in executing a survey,
runs *all the lines* of former surveys which it adjoins: he ought to
have all the drafts of former surveys in his hands, but this is not
always the case; he knows those lines which he adjoins in the sur-
vey he is making, or somebody shows them to him, and he gene-
rally takes care not to interfere with prior surveys.   The names
and notes on the draft he returns are evidence of how he under-
stood the matter at the time; but, a little reflection will satisfy any
person that these are only of use to show the relative situation of
the survey then making.   In this case, the plaintiffs' survey was
made and returned in 1774; their title depended then, and depends
now, on what was done at that time; their right, and the extent of
that right, were then established; and no act of any individual or
officer in 1809, can in the slightest degree affect it.

Whether Mr. *Domul* ran, or did not run the lines of *Emerick*,
in 1809; whether he had a correct or incorrect draft of *Emerick's*
survey; or whether the lines of that survey were shown him erro-
neously by the defendant, or by some other person; nay, whether
he executed the defendant's survey in part on ground within *Eme-
rick's* by mistake, or by design, is wholly immaterial.   No act of
the defendant's, or of a deputy surveyor, can divest the right as
before established; it cannot be taken away from the owner except
by the operation of the statute of limitations, or by the owner's
sale of it.

(Robeson and others *v.* Gibbons.)

· These notes or memorandums on a draft are often used as illustration, as proof of location; or where a draft is lost, as secondary evidence; and, where two surveys are made,. at the same time, by the same surveyor, and some mistake in the drafts as returned, may avail, as to title; but, that the memorandums on a. survey made in 1809, should control, or in any way affect a survey in 1774, returned and patented, and the lines of which are still found on the ground, is out of the question.     They did not weigh a feather—they ought not to have been regarded by the jury, and so the court should have told them.

The answer to the last point is rather loose.    The true answer was, that *William Bonham*, not bringing suit sooner, was no bar to the plaintiffs' recovery.    The time prescribed by the statute of limitations is a bar.    I would adhere to that strictly, and neither relax nor enlarge for favourable or hard cases; it is a matter of positive enactment, and neither courts nor juries can disregard it, without forgetting or disregarding their duty.

There was another point made in this cause, as to the nature and effect of a connected draft from the surveyor general's office under the seal of that office. The case, *Vickroy* v. *Shelley*, 14 *Serg. & Rawle*, 372, settles this point, and to that I refer.

Judgment reversed, and a *venire facias de novo* awarded.