## Zeigler *against* Hautz.

A plaintiff in ejectment having given evidence that he and the defendant claimed under the same title, is not thereby estopped from showing the truth of his case, because it would conflict with the evidence of title which he had previously given.

Before a deed can be given in evidence, it is necessary to show title in the grantor, but it need not be a perfect title; for any evidence, however slight, is sufficient: and upon evidence tending to show title having been given, it is error in the court to reject the deed, and peremptorily to direct the jury to find against the party offering it.

ERROR to the common pleas of *Northumberland* county.

Isaac Zeigler against Christian Hautz. This was an action of ejectment for the undivided fifth part of a tract of land in Coal township, containing seventy-five acres.

The testimony, which was very voluminous, so far as it is necessary to an accurate understanding of the points raised and decided, is fully stated in the opinion of the court.

*Bellas* and *Merrill*, for plaintiff in error, on the subject of the rejection of the articles of agreement, cited 3 *Bac. Ab.* 388, tit. Grant, let. H.; 5 *Mass. Rep.* 355; 10 *Serg. & Rawle* 275; 9 *Serg. & Rawle* 47; 13 *Serg. & Rawle* 151; 1 *Watts* 533; 5 *Wheat.* 359; 2 *Johns. Rep.* 37; 11 *Johns. Rep.* 365; 13 *Vin.* 400, pl. 24; *Cro. Cas.* 447; 17 *Johns. Rep.* 146; 6 *Cowen* 706; 2 *Serg. & Rawle* 53; 3 *Rawle* 283; 2 *Johns. Rep.* 22; 10 *Johns. Rep.* 388; 1 *Cowen* 613; 5 *Cowen* 200; 9 *Wend.* 223; 10 *Wend.* 414.

*Donnel* and *Greenough*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—The tract of land, including the part for which the ejectment is brought, was surveyed in the name of John Brady. The plaintiff opened the case by stating that both parties claimed under John Cheny, and that by several mesne conveyances, the title was vested in the plaintiff. The fact that they claimed under

[Zeigler v. Huutz.]

Cheny not being admitted, it became necessary to prove it, and for this purpose, the plaintiff gave in evidence a deed from Christian Houtz to Robert M'Carty, which contained various recitals, and, among others, the recital of a conveyance to John Cheny, and also a conveyance by him to Benjamin Campbell, as whose property it was conveyed by the sheriff to the defendant, Christian Hautz. The plaintiff then offered in evidence an article of agreement between John Cheny and George Deck, which included a tract of fifty acres, and a distinct tract of ten acres sixty-six perches. John Cheny, the vendee, died before the completion of the contract, whereupon his administrator petitioned for leave to execute a deed, which was granted, and on the 17th of April 1815, the administrator conveyed to Deck (after reciting the payment of the whole purchase-money) the tract containing the ten acres sixty-six perches, but omitted to convey the tract in dispute. The court excluded the testimony, because the plaintiff himself had shown the title out of Cheny, under whom he claims. To obviate this objection, the plaintiff offered to prove that though the conveyance by Cheny embraced the entire tract surveyed in the name of Brady, yet that the land in controversy (part of the said tract) was held in trust by Campbell for Cheny. That the conveyance of the whole was to enable him to take out a patent, &c. The evidence, as offered, was opposed by the defendant, but, on argument, was admitted by the court, whereupon the plaintiff gave the testimony particularly set out, and which forms part of the case. The plaintiff again offered the articles of agreement between Cheny and Deck, in connection with proof that he had made diligent search for the article of the 19th of September 1808, referred to, and that it cannot be found; and also a connected chain of title from Deck to the plaintiff. The testimony was overruled, and the court instructed the jury that the plaintiff was not entitled to recover.

But little weight is to be attached to the objection that the plaintiff had himself shown the title out of Cheny. That the title was in Campbell appeared no otherwise than in the recital in the deed from Houtz to M'Carty, but that deed was given in evidence for the special purpose of proving that both parties claimed under the same person, to supersede the necessity of entering into proof of the original title. There is nothing in this to estop him from showing the truth. The recitals are but evidence of a fact which may be rebutted; and even if the deed itself, from Cheny to Campbell, had been given in evidence, it is competent for the plaintiff to show that, although an absolute conveyance on its face, it was either fraudulent, or that it was given for the special purpose of enabling Campbell to take out a patent, with an agreement that he would reconvey a part to the vendor; that in fact Campbell was, as to that part, but a trustee for Deck. If a written agreement for a reconveyance had accompanied the deed, the position would not admit of argument, but if it may be shown by parol, as the court have decided,

VIII.—2 H

there can be no difference, so far as it affects the admissibility of evidence in opposition to the deed.

But it is said that the article was properly registered, because no title was shown in Cheny, or subsequently in Deck.    In relation to this doctrine, the law has undergone some change.    In M'Dall's Lessee *v.* M'Dall, 1 *Dal.*    it is decided that a deed may be given in evidence, whether pertinent or not; but this, in its utmost latitude, was repudiated in Faulkner's Lessee *v.* Eddy, 1 *Binn.* 190, and in subsequent cases, 10 *Serg. & Rawle* 9.    Before a deed can be received in evidence, it is necessary to show title in the grantor, but this need not be a perfect title, for any evidence of title, however small, is sufficient.    Nor does the rule apply in the same extent to a deed containing an executory contract between the parties for the future procurement and conveyance of title to land.    Cheny *v.* Parker, 3 *Rawle* 283.    The objection is that there was no proof of title in Cheny.    The suit is brought to recover part of the tract surveyed in the name of John Brady, supposed to contain about fifty acres, and designated by the name of the mill-stone tract.    The plaintiff alleged that the whole of the John Brady survey belonged to Cheny, that being unable to patent the land himself, and also to diminish the expense of obtaining a patent, it was agreed that the whole tract, including the land in dispute, should be conveyed to Campbell.    That Campbell was to be at the expense of obtaining a patent for the whole tract, and that in consideration of the transfer, Campbell was to convey by deed, to Cheny, the mill-stone tract, containing fifty acres or thereabouts.    He further alleged that the agreement was in writing, but that the agreement has been lost or mislaid; that the deed was never recorded, nor was it delivered, except for the purchases as above stated.    For the purpose of showing the real nature of the transaction, he was permitted, and has given the parol testimony.    The plaintiff has endeavoured to prove that Cheny, after the deed to Campbell, retained the possession of the mill-stone tract, and that in full view, and with the knowledge and consent of Campbell, he used the *locus in quo* as his own property; that he was a mason, and that he was in the constant habit of taking mill-stone, without stint or question, from the tract, up to the time that he sold to Deck, and that his son did the same after his death.    If the witnesses are worthy of belief, (a matter wholly for the decision of the jury,) there is some proof of these facts which, it cannot be denied, have a direct bearing on the title, and certainly gives some plausibility, to say the least of it, to the allegation that there was an agreement or understanding between Cheny and Campbell as to the mill-stone tract, which continued in the possession of Cheny after the date of the deed to Campbell.    And the suggestion derives some weight from the fact that such arrangements were not uncommon, as it tended to lessen the expense of obtaining a patent, an object not to be totally disregarded; and also because the part retained was more useful to Cheny, as it was

from that part that he obtained the materials to carry on the trade of a mason. That there was a division of the Brady survey between Campbell and Cheny, appears from the testimony of the son of the latter. His father, as he says, showed him the fallen white oak, as the division corner between the saw-mill tract and the fifty acres. He also says his father made a great many mill-stones, and that he made a great many every year, till his father sold the property. That on one occasion he hauled a number of logs to the mill, and that Campbell asked him whether he got them off his land or his father's, and that he replied he got them off his father's land. Campbell, as John Deck testifies, said the fifty acres belonged to Cheny, and another witness, who learned the mason trade with Cheny, and worked on the land, says that he never heard Campbell claim the mill-stone tract, but that Cheny always claimed it; that Cheny made and sold mill-stones off the tract, which Campbell must have known, as they were often together, and the stones were hauled by Campbell's saw-mill. Peter Shall, a witness, says that Campbell and Cheny were together at his house; that he heard Cheny say that he kept the fifty acres for the purpose of making mill-stones, and that Campbell and Cheny both said it was Cheny's mill-stone tract. Thompson says that he knows the mill-stone tract; that Cheny claimed it, and had it in possession. Campbell, at the same time, owned the saw-mill tract. Campbell said he never owned the mill-stone tract; that he hauled logs for Cheny, and took a load off the mill-stone tract. Campbell asked if we had got it off his land. He said he had not; that he had got it off the mill-stone tract, and that Campbell said no more about it. But in addition to this evidence, there is positive proof that Campbell was to patent the land. John Deck says that he and Campbell met on the road, and that Campbell told him he had promised Cheny that he was to get a patent out of the office, and to give Cheny a deed for the fifty acres. If this testimony be true, it is an indication of some agreement or contract between Campbell and Cheny as to the occupation of the land. Now whether this was as a tenant, lessee, or as the equitable owner, does not distinctly appear; but it does not so clearly appear to have been as a lessee, as to justify the court in excluding the testimony, because there was no evidence of title in Cheny. Whether enough was shown to entitle the plaintiff to a verdict, I shall not take upon me to decide; but we are of the opinion that the court erred in directing the jury peremptorily to find a verdict for the defendant. It may be that the defendant may show that he ought not to be affected without notice, and of this defence he will have the full benefit on another trial. What the title of the defendant may be, has not been disclosed, but enough has appeared to make it incumbent on them to make known the ground on which they hold the possession of the property. Another objection requires some notice. It is undoubtedly essential to the validity of a grant, that there should be a thing granted, which

must be so described as to be capable of being distinguished from other things of the same kind. But it is not necessary that the grant itself should contain such a description as, without the aid of extrinsic testimony, to ascertain precisely what is conveyed. Black *v.* Dogherty, 5 *Wheat.* 359. A conveyance of a certain number of acres, to be taken out of a particular part, or to be laid off on a particular side of a tract, is good. Thus in Erwin *v.* Heln, 13 *Serg. & Rawle* 151, it is held that a sale of a tract of unseated land, for taxes, &c., by the mere description of so many acres, would be void for uncertainty; but if it be of so many acres on a particular side, or to be taken out of a particular portion, it might be made good by a subsequent survey. Words of general description are sufficient to pass the grantor's estate. Here the words are general, but they may be shown to apply to the *locus in quo* by extrinsic circumstances, and whether the description in the article applies to the land in dispute, is a matter for the decision of the jury, under all the circumstances.

Judgment reversed, and *venire de novo* awarded.