## GOUNDIE *v.* NORTHAMPTON WATER COMPANY.

A recovery in trespass against officers and agents of a corporation, is not evidence against the corporation without proof of privity.

The effect of a deed of partition is not to alter the titles of the parties, but to designate the boundaries.

Testator having devised certain lands to his children in severalty, and the residue in common, one of the children died, and his estate descended to his sisters. M., one of the children, joined in a conveyance with her husband of the property devised to her in severalty, which was reconveyed to him in fee. M. and her husband then joined in an indenture with the other devisees and heirs, which recited that some mistakes had been made by testator in the boundaries of the tracts devised; and to avoid hardships and difficulties an equal partition had been agreed upon. In this deed M.'s share was allotted to her and her heirs in severalty. The title to the lands previously conveyed to her husband is not thereby affected.

A conveyance by husband and wife of the wife's land, under the act of Assembly, though not made to a purchaser for valuable consideration, passes her title.

Where more than six months had elapsed before the registry of conveyances to different purchasers, a registry of the earlier deed before the purchaser under the subsequent conveyance had recorded that, is notice to purchasers under the subsequent deed, although possession has been taken, and improvements made by the second purchaser. And after such registry, the owner need not give notice of his title at a sheriff's sale of the other title, nor to one making improvements.

The Commonwealth alone can object to a want of capacity in a corporation to hold land which it was not authorized by its charter to purchase.

In error from the Common Pleas of Lehigh.

*Dec.* 20, 21. Ejectment by defendants in error.—The title ex-

hibited by the plaintiffs below was the will of James Allen in 1778, by which he devised certain pieces of land, including the premises in question, according to the verdict of the jury, to his daughter Margaret, wife of William Tilghman; to his son James, and his daughters Ann and Mary, he gave other specific property, and the residue of his estate among his children equally. In May, 1798, William Tilghman and wife, Ann Allen, and H. Livingston and his wife Mary, late Allen, joined in an indenture *tripartite*, reciting the death of James Allen, son of the testator intestate, and that there was reason to believe the testator had made some mistakes in the boundaries of the lots devised by him, and that to avoid the hardships and difficulties resulting therefrom an equal partition had been agreed upon under a reference to three persons. In this partition, as to Mrs. Tilghman's share, it was said, " and the said *Margaret Tilghman shall hold to herself and her heirs and assigns for ever in severalty*," &c. The plaintiffs then gave in evidence, under objection, a conveyance of the land devised in severalty to Mrs. Tilghman, by William Tilghman and wife, to Davis, and a re-conveyance to William Tilghman, both dated on the 3d April, 1798. The consideration in these deeds was nominal. It will be observed that these deeds were prior to the partition, and the objection was founded on the supposition that by that partition the title was re-vested in Mrs. Tilghman. They further, under objection, gave in evidence a conveyance of the land in question by William Tilghman to the Northampton Bank, dated April 1, 1823, recorded June 7, 1834; and a conveyance by the bank to the plaintiffs in 1838. And they also, under objection, gave in evidence a certified copy from the land-office of drafts of lands lying in the Forks of the Delaware. The defendant's title was a conveyance of the lot in question to Miller, by the two sisters of Mrs. Tilghman, who were her heirs, by deed, in 1828, recorded in 1841. In 1835, Miller conveyed to Rinker, the deed being recorded in 1841. In 1837, Rinker's property was sold by the sheriff, and the grantee conveyed to the defendant below, whose deed was recorded in 1840; and there was evidence that at the sheriff's sale no notice had been given of the plaintiffs' title. He then gave in evidence a private act of the legislature in 1799, (to be found in 5 Whart. 46,) which recited the seisin of William Tilghman as tenant by the curtesy of divers lots in the town of Northampton, (in which the lot in question lies,) and empowers him to convey, on ground-rent, during the minority of his son; also, the act of 1818, (Ib. 51,) with the same recitals, and authorizing him to make absolute conveyances during

the minority of his grandson. It was admitted he died in 1820. He then proved that after Miller bought, a survey was made for the bank in the presence of the president, when Miller was present, which excluded the ground in question; but before defendant purchased he had notice of the plaintiff's claim. It also appeared that Miller had erected a mill, which was driven by water carried through a trunk on the premises in question. In consequence of an alteration in the trunk interfering with the plaintiffs, it had been cut away. He also offered in evidence the record of a recovery in an action of trespass by the present defendant against Ebner and others for cutting away this trunk, coupled with evidence that the defendants there were officers and agents of the present plaintiffs, and attempted to justify under the alleged title. The plea there was, "Not guilty;" and the court rejected it. He further proved the charter of the plaintiffs, which authorized them to take and hold lands necessary for the erection of their works.

The points made by the defendant below were, that the conveyances and the recitals in the acts of the legislature showed that William Tilghman had but an estate by the curtesy; that if Miller took possession, and made valuable improvements under his deed of 1828 before plaintiff's conveyance of 1823 was recorded, he had the better title. If the officers of the corporations knew of the sheriff's sale, and gave no notice of their title, they could not now set it up. If the lands were not necessary to plaintiff's works, they could not *take and hold*, and hence could not recover. The same point was made as to the title of the bank.

His honour, BANKS, P. J., instructed the jury, that William Tilghman's title remained in him after the partition. His conveyance being first recorded, gave title to the land. The other points were negatived.

The admission and rejection of the evidence, and the answers to the points proposed, were the errors assigned.

*J. M. Porter*, for plaintiff in error.—The deed of partition executed by William Tilghman re-vested the title in his wife and her heirs, which it is the policy of the law to do, and the parties claiming under him are estopped by his admissions. The effect of the partition is to assign each party their separate estate: Feather *v.* Strohecker, 3 Penna. Rep. 505. The acts of Assembly obtained by him show his own view of the matter.

The conveyance and reconveyance had no effect upon her title; the act authorizing conveyances by *femes covert* is con-

fined to those for a valuable consideration; this is declared in the preamble of the act of 1826. Neither of these corporations could take land, unless specially authorized by their charter: Wolf v. Goddard, 9 Watts, 544. The drafts were but extracts, and no authority to make them was shown: Wilson v. Stoner, 9 Serg. & Rawle, 39; Biddle v. Shippen, 1 Dall. 19. The record was evidence, since the plea of *liberum tenementum* is not necessary to admit a defence on the title, and they attempted to justify on that: Kerr v. Chess, 7 Watts, 371; Foster v. McDivit, 9 Watts, 349.

Miller being *in possession*, and making improvements, was in as good a position as if he had given notice by recording; Jaques v. Weeks, 7 Watts, 276; Pierce v. Turner, 5 Cranch, 154; Green v. Drinker, 7 Watts & Serg. 442; 3 Yeates, 359; 2 Ib. 259; 6 Binn. 119. When this case was here before, 5 Watts & Serg. 49, this point was not made. They were bound to know of the sheriff's sale, and give notice: Boggs v. Varner, 6 Watts & Serg. 472.

The court erred on the question of the capacity of the corporations; they were bound to show the purchase was within the license of the charters.

*King*, contrà.—The partition was not of the lands held by Tilghman under the conveyance, but of those held by descent. But what is the effect and design of a partition; not a conveyance, but separation merely. It merely determines the boundaries to the estates. The question as to the corporations has been determined in Leazure v. Hillegas, 7 Serg. & Rawle, 313; and that as to the drafts as late as Farr v. Swan, 2 Barr, 245. They were not received as evidence of title, but of locality. To conclude the corporation by the action against their agents, there must be proof the acts were done by authority: Hurst v. McNeil, 1 W. C. C. R. 75.

*Jan.* 8. COULTER, J.—There is nothing in the first bill of exceptions to evidence. The deeds therein mentioned were properly admitted. The objection made by the defendant, that they were not relative or pertinent to the issue, is not sustained in point of fact; because they are material in making out the chain of title, by which the claim of the plaintiff below is sustained. The argument of the counsel for the plaintiff in error here, was as to the legal effect of the deed when connected with other facts. But whatever that might be was a matter of law, subject to instructions from the court when the whole case was submitted to the jury, and afforded no ground whatever for their exclusion as evidence. In

McDill v. McDill, 1 Dall. 63, it was ruled, that any deed, when duly proved, might be given in evidence. But in subsequent cases—Faulkner v. Eddy, 1 Binn. 190, and Peters v. Condron, 2 Serg. & Rawle, 80—Chief Justice Tilghman said, that decision carried the law too far. It is now settled, that to entitle a deed to be received in evidence, the grantor must have some interest, either in law or equity : 3 Watts, 95. But any evidence of title, however small, is sufficient : Zeigler v. Hautz, 8 Watts, 380. The grantors had some interest, undoubtedly : even the plaintiff in error admits it.

The second bill of exception is of the same character. The grantor in the deed therein specified had an interest in the land in dispute, and the plaintiff below claimed under that deed.

The third bill of exceptions is also in the same category, precisely. The deed therein mentioned was part of the chain of title under which the plaintiff below claimed the land in dispute, and the legal effect of that deed was the subject of instruction from the court to the jury.

The certified copy of an old connected draft of adjoining surveys, found in the land-office by Jacob Sallade, surveyor-general, being admitted in evidence, and also a certified copy of a survey of a tract of land, in the name of Joseph James, certified from the land-office, furnish the fourth bill of exceptions. These copies of old connected drafts of the adjoining surveys found in the land-office, although they could not be operative as distinctive evidence of title, or any evidence of title, might be extremely useful in fixing boundaries, and as illustrative of old lines ; and we perceive nothing improper in their admission under the circumstances of the case. It is true that a survey cannot be given in evidence, without showing an authority to make it, or that it had existed and has been lost ; but that is when it is offered as part of the process of acquiring title. Nothing is more common, however, than to receive the drafts of a surveyor in actions of ejectment, when the controversy is about boundaries, although he was employed by the party. And the courts appoint artists to survey the disputed part, and make drafts of the contiguous and adjoining surveys, when the dispute is in relation to boundaries. These drafts are not evidence of title, but they are evidence of locality, and, connected with other evidence, go to the jury for their value. A connected draft from the surveyor-general's office is evidence not to make title, but to show whether there be any, and what, interferences : Robeson v. Gibbons,

2 Rawle, 45. Certified copies of papers in the land-office are admissible: Vickroy *v.* Skelley, 14 Serg. & Rawle, 372.

The fifth bill of exceptions is as to evidence rejected, which was offered by the defendant below. The offer did not go far enough. The record offered in evidence did not show that the Water Company was a party, but the contrary, and the defendant did not offer to show that it was privy. The evidence was therefore rightfully rejected, under the well-established rule, that records are only evidence between parties or privies. It was not even offered to show, in connection with the record, that the Water Company had any notice of the proceeding.

The court below could not have instructed the jury as prayed for, in the two first points submitted by the defendant, without committing the most flagrant error.

The partition did not convert the title to all the lands assigned to Mrs. Tilghman and her husband, by the operation of that partition to a title in fee-simple. There was no owelty, no bargain and sale, no creation of title or estate, nothing but a mere separation of the share of one party from the share of another. A partition leaves the title of the parties as it was. Mrs. Tilghman had the same title after the partition which she had before. That a partition was not conclusive upon the title of any one was ruled by this court, in a case decided at the last Pittsburgh Term, and not yet reported : Costen *v.* Merchants' and Mechanics' Bank. This alone would have been sufficient to justify the court in refusing the instruction prayed for.

But there was a mist thrown over this part of the case by the elaborate argument of the experienced and sagacious counsel of the plaintiff in error, which a short statement of the facts will clear away. By the will of the elder Allen he devised to each of his daughters portions of real estate in severalty, and also a portion to his son James in severalty, and then devised all the residue of his estate to his children as tenants in common. James died intestate, and his part descended to his sisters as tenants in common. So that Mrs. Tilghman held a certain part in severalty, and of this part, or a portion of it, she joined in a deed with her husband to Davis, who conveyed back to William Tilghman in fee—and these were the two first deeds which the defendant below wished to shut out. But she also held, in common with her sisters, certain other portions of the estate of her father, which fell to her by the death of James, and of this part they agreed to make partition, and as one of the sisters was dead, leaving minor children, an act of

Assembly was procured and persons appointed to make partition, which was done, and in the deed, as there was some difficulty about boundaries of those parts devised to the sisters in severalty, there was assigned to each their portion of that held in common, and also that held in severalty by metes and bounds, so as to fix exactly the boundaries—a clumsy mode, doubtless, for such persons to adopt, but it was such as they chose. The attempt of the defendant below is to make that deed of partition revest in Mrs. Tilghman the tract of land which she and her husband sold to Davis, and Davis conveyed back to William Tilghman in fee, and which he transferred for a valuable consideration in her lifetime, and to establish, that after the death of Mrs. Tilghman her husband was only tenant by the curtesy. But we are of opinion that the partition and the act of Assembly, in point of law, as they were clearly intended in point of fact, left the title of William Tilghman undisturbed, on his own right, as tenant in fee, and that the sale of it by him vested the title in fee in the purchaser. There is nothing in the third point submitted: The deed from Tilghman to the bank was upon record before Livingston sold to Miller, and afforded the notice which the law requires.

The fourth point of the defendant below has nothing in it. If the bank or Water Company, during the time they held the land, encouraged the defendant to purchase the title of Livingston, and encouraged him to make large improvements on the faith of that title, there might be something in it. But not giving actual notice of their title, even if they knew of defendant's purchase, when they had put their title on record, and thus given the notice which the law requires, could not prejudice them. The last two points put together are, that, as there is no evidence that the Northampton Bank acquired this land, to secure a debt, or for the use of carrying on their operations, it could neither hold nor sell, and that Tilghman's deed to the bank, and that of the bank to the Water Company, were null and void, and that therefore the plaintiff cannot recover.

But these positions are as invalid as the others taken by the counsel for plaintiff in error. A corporation could not hold lands in Pennsylvania without a license by law; but it had the capacity to contract for them and pay for them, and a deed for full value would doubtless have divested the estate of the grantor, and vested it in the corporation, subject to the rights of the Commonwealth. And the grantor might convey, subject to the right of the Commonwealth, who by virtue of the right of sovereignty or eminent

domain, would be entitled to the fee. These principles are fully recognised in Leazüre *v.* Hillegas, 7 Serg. & Rawle, 320. There is neither any rule of reason or of law that would assist Livingston or his alienee in their attempt to assume the land sold by Tilghman to the bank for full value. The Commonwealth alone, as ultimate owner of the fee, can interpose, and she only on a state of facts different from any disclosed in this case.

Judgment affirmed.