# Seifert *v.* Rusch, Appellant.

*Corporations—Foreign corporations—Registration—Doing busi-
ness—Owning real estate—Principal and agent—Real estate in
name of agent—Equity—Bill to enforce conveyance—Profits—
Mesne profits—Pleadings—Statute of mortmain—Acts of April
26, 1855, P. L. 328, and April 22, 1874, P. L. 108.*

1. The Act of April 26, 1855, P. L. 328, is a statute of mortmain,
and under it the Commonwealth alone can question the right
of a foreign corporation to take and hold real estate.

2. An agent cannot set up the illegality of a transaction wherein
he obtained the property of his principal, for the purpose of keep-
ing such property.

3. A foreign corporation holding real estate in this state as an
investment, is not doing business within the meaning of the For-
eign Corporation Registration Act of April 22, 1874, P. L. 108.

4. Where an agent of a foreign corporation is instructed to buy
real estate with money furnished by the company, and takes the
deed in his own name, and executes a declaration of trust for the
same to the company, the agent may be compelled by a bill in
equity to convey the property to the company and account for
mesne profits.

5. In such case, where plaintiff avers in its bill that it was enti-
tled to receive from defendant, as mesne profits, $25,000 per year,
and that this was a fair and reasonable rate for "use and occupa-
tion," the court cannot enter a decree charging the defendant at
the rate of $34,000 per year.

6. The mere fact that defendant gave no testimony upon the sub-
ject of what was a fair rental, in contradiction of that introduced
by plaintiff, does not entitle the latter to recover on a different
basis, or at a higher rate, than claimed in the bill.

Argued October 14, 1920. Appeal, No. 129, Oct. T.,
1920, by defendant, from decree of C. P. Allegheny Co.,
Jan. T., 1920, No. 211, on bill in equity, in case of Wil-
liam A. Seifert v. Ernest F. Rusch. Before BROWN,
C. J., MOSCHZISKER, WALLING, SIMPSON and KEPHART,
JJ. Decree modified and affirmed.

Bill in equity for conveyance of real estate and for ac-
counting of mesne profits. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

The court entered a decree for the conveyance of the real estate in controversy, and that defendant's account for rental at the rate of $34,000 per year. Defendant appealed.

*Error assigned,* among others, was decree, quoting it.

*George E. Alter,* with him *McVicar, Hazlet & Gardner,* for appellant.—Unless the courts dispense with or disregard the pleadings in a case, the decree must be reversed: See Theisen v. Rys. Co., 256 Pa. 475; Wilkes-Barre v. Chase, 7 Pa. Superior Ct. 343; Brolasky v. Ferguson, 48 Pa. 434.

The transaction was illegal: Phœnix Silk Mfg. Co. v. Reilly, 187 Pa. 526; West Jersey Ice Mfg. Co. v. Armour & Co., 12 Pa. Superior Ct. 443; Chicago B. & M. Co. v. Myton, 24 Pa. Superior Ct. 16; Pavilion Co. v. Hamilton, 15 Pa. Superior Ct. 389; Peoples B. & L. Assn. v. Berlin, 201 Pa. 1; Kernchen Co. v. English, 70 Pa. Superior Ct. 293.

*John G. Frazer,* with him *Thomas B. Paxton, Jr.,* and *Reed, Smith, Shaw & Beal,* for appellee.—The fact that the Mœrlein Brewing Company was a foreign corporation and was not registered as such in Pennsylvania until December, 1919, does not defeat the right of plaintiff to a decree: Com. v. R. R., 251 Pa. 6; New York & Scranton Construction Co. v. Winton, 208 Pa. 467; Julius King Optical Co. v. Ins. Co., 24 Pa. Superior Ct. 527; United States Circle Swing Co. v. Reynolds, 224 Pa. 577; National Cash Register Co. v. Shurber, 41 Pa. Superior Ct. 187; Duroth Mfg. Co. v. Cauffiel, 243 Pa. 24; Finance & Guaranty Co. v. Creamery Co., 69 Pa. Superior Ct. 261; Smith v. Blachley, 188 Pa. 550; Hovey's Est., 198 Pa. 385.

Plaintiff's right to a decree is not affected by the Act of 1855: Leasure v. Ins. Co., 91 Pa. 491; American Slate

Co. v. Phillipsburg B. & L. S. Bank, 8 W. N. C. 430; New York & Scranton Construction Co. v. Winton, 208 Pa. 467; Bone v. Canal Co., 18 W. N. C. 125; Grant v. Coal Co., 80 Pa. 208; Kerfoot v. Bank, 218 U. S. 281.

An 'agent or trustee who takes possession of and occupies the real estate of his principal or cestui que trust is chargeable for the highest rent that could have been obtained for it: Landis v. Scott, 32 Pa. 495.     .

OPINION BY MR. JUSTICE MOSCHZISKER, December 31, 1920:     .

This is an equitable proceeding to compel Ernest F. Rusch to convey to plaintiff, William A. Seifert, a certain piece of real estate in the City of Pittsburgh, which the bill alleges defendant held title to as trustee for the Christian Mœrlein Brewing Company, grantor of plaintiff; the bill also prays that defendant be ordered to pay a rental for use and occupation. After hearing, a decree was entered in favor of plaintiff; and defendant has appealed.     .

The chancellor found the following material facts: Defendant was a wholesale liquor dealer in Pittsburgh, and the exclusive customer for the product of the Mœrlein Brewing Company in Allegheny County and adjoining territory; he purchased the Mœrlein beer in carload lots "f. o. b. Cincinnati, Ohio"; the Mœrlein Brewing Company is a foreign corporation chartered by the state of Ohio to manufacture and sell lager beer; it was registered in Pennsylvania, for the first time, on December 22, 1919 (no doubt to gain future advantages of the Act of June 11, 1919, P. L. 441, permitting foreign corporations, "authorized to do business in this state," to hold real property within its confines); during the period involved in this case, the brewing company maintained. no office in Pennsylvania, did not conduct its corporate business here, and defendant was not its general agent, but a customer (Hovey's Est., 198 Pa. 385, 386, 387)

and its special agent in the particular transactions hereinafter recited.

These facts were also found: At Rusch's suggestion, the brewing company purchased the land in controversy, paying therefor $55,000 in cash out of its own funds, this being sent to defendant accompanied by a letter, stating that the money was "to pay for the property purchased by you for our account," and instructing him to have the deed made to the brewing company, or, if there was any reason why this should not be done, then to have it made in the name of John Mœrlein personally; defendant, on September 8, 1910, acknowledged receipt of the draft, saying it was "to pay for the property purchased for your [the brewing company's] account"; and his letter stated that he would mail the deed to his principal when the transaction was closed. Instead of acting in accord with instructions, Rusch accepted conveyance of the property to himself; but, on the same day, September 12, 1910, he executed and delivered to the brewing company a declaration of trust as follows: "I, Ernest F. Rusch, the grantee in a certain deed of conveyance, dated the 2nd day of September, 1910, in which the Iron & Glass Dollar Savings Bank is the grantor, for property in the Seventeenth (formerly Twenty-sixth) Ward, Pittsburgh, do hereby certify that I hold the same in trust for the Christian Mœrlein Brewing Company of Cincinnati, Ohio, the purchase money therefor having been paid by said company, and that I will, upon request made by said company, convey the same to it or its assigns at any time desired."

In addition to the facts already recited, the chancellor found as follows: In December, 1910, the brewing company erected a large brick and concrete warehouse "suitable for the purpose of carrying on the business in which defendant was engaged," using the latter as agent in erecting the building, but paying the cost, amounting to $133,961.90, out of its own funds; the accounts of the brewing company show these transactions entered on its

books as "E. F. Rusch, Trustee, Pittsburgh Ice House"; in September, 1919, the brewing company duly transferred to Seifert, plaintiff in the present case, all of its right, title and interest in this Pittsburgh property, and the latter now stands in the shoes of that concern for purposes of this case; defendant never questioned the fact that the brewing company was the owner of the property, until July 14, 1919, "when he denied it had any interest therein, asserted he was the owner in fee, and refused to recognize [that corporation's] rights under the declaration of trust"; October 2, 1919, a deed was presented to defendant, transferring the property to plaintiff, which he refused to sign; "defendant, or those claiming under him, have used and occupied the premises......since May 1, 1911, and no rent therefor has ever been paid," although defendant paid the taxes and water rents, and made repairs upon the property; the brewing company, however, acquiesced in this arrangement until defendant denied the title of the former, on July 14, 1919.

Finally, the chancellor found that "the fair rental for the use and occupation of the premises, from July 14, 1919," the day when defendant denied the equitable title of plaintiff, was $34,000 a year; and, on June 25, 1920, it ordered rent to be paid at that rate from July 14, 1919; the court also directed defendant to execute and deliver to plaintiff a deed for the property in controversy.

Defendant's answer does not aver that the particular real estate transactions here involved represent the doing of business in this State, by an unregistered foreign corporation, contrary to law; it contains simply general allegations that the Christian Mœrlein Brewing Company, "since 1895 and prior thereto," had "invested large portions of its capital in Pennsylvania" and had "leased for use" here "large portions of its personal property," in a manner contrary to the laws of the Commonwealth, but the chancellor did not so find. Defend-

ant, nevertheless, now contends that plaintiff cannot recover, because he maintains that the purchase of the Pittsburgh property and the erection of the building thereon, by the brewing company, were in themselves unlawful acts.

So far as concerns the allegation that these transactions are contrary to the provisions of the Registration Act of April 22, 1874, P. L. 108, it is sufficient to say that, on the findings in this case, they were properly viewed by the court below as merely representing an investment by the Mœrlein Brewing Company (New York and Scranton Construction Co. v. Winton, 208 Pa. 467, 471-2); but, says defendant, such an investment is contrary to section 5 of the Act of April 26, 1855, P. L. 328-9, which forbids any foreign corporation to acquire and hold real estate within this Commonwealth, either directly or indirectly.

The answer to this last proposition is twofold: (1) An agent cannot set up the illegality of a transaction, wherein he obtained the property of his principal, for the purpose of keeping such property (Smith v. Blachley, 188 Pa. 550, 554-5); and (2) the act in question is a statute of mortmain, and the general principle applies that the Commonwealth alone can question the right of a foreign corporation to take and hold real estate: Leazure v. Hillegas, 7 S. & R. 313, 319; Goundie v. Northampton Water Co., 7 Pa. 233, 240; Bone v. Delaware & H. Canal Co., 18 W. N. C. 125.

The language employed by this court in Duroth M. Co. v. Cauffiel, 243 Pa. 24, 29, is appropriate here, although the facts involved are somewhat different from those in the present case. We there said: "The cases cited by the appellant relate to the right of unregistered foreign corporations to enforce contracts made in the conduct of business in this State or to recover property accruing to them through such contracts, and they have no application to the facts at bar. Here the plaintiff did not seek to recover through or by reason of any contract

entered into with the defendant; it simply sought the
return of property belonging to it which had been de-
livered to the latter, the ownership of which it main-
tained had never passed to the defendant." So, in this
case, plaintiff simply asks that the real estate which be-
longs to him, as the grantee of the cestui que trust of
defendant, be formally placed in his name, and that de-
fendant pay for its use. All of this he had a right to ask
and receive; but we think the learned court below al-
lowed him a greater amount of rent than the pleadings
warrant.

The bill avers that "plaintiff is entitled to have and
receive from defendant the sum of $25,000 per year, from
the first day of May, 1911, to date of delivery of posses-
sion to plaintiff, which sum is a fair and reasonable rate
for use and occupation by defendant"; and it prays that
Rusch "be required to pay......at the rate of $25,000
per year," for "use and occupation," from May 1, 1911,
"to date of delivery of possession." Notwithstanding
this averment and prayer, the court below decreed that
defendant must pay $34,000 per year net rental, making
no allowance for the cost of "taxes, water rents and re-
pairs," which the chancellor found defendant had paid.

We have repeatedly held that one must recover on the
case pleaded; and, while we agree with the court be-
low that defendant should pay a reasonable rental from
the day he set up a hostile claim to the property in con-
troversy, whether he occupied it himself or someone else
had possession under him, yet we cannot agree that the
mere fact that "he gave no testimony" upon the sub-
ject of what is a fair rental, "in contradiction of that in-
troduced by the plaintiff," entitles the latter to recover
on a different basis or at a higher rate than claimed in the
bill: Spangler Brewing Co. v. McHenry, 242 Pa. 522, and
cases there cited; Saupp v. Streit, 258 Pa. 211, 215;
Isett v. Maclay, 265 Pa. 165, 170; Lantz v. Frey, 19 Pa.
366; Spackman v. Byers, 6 S. & R. 385.

The record is remitted to the court below with directions that it modify the final decree, so far as the sum allowed for use and occupation is concerned, in accord with the views here expressed, with authority to proceed in such manner as may be necessary to that end; and, subject to this modification, the decree is affirmed; defendant to pay two-thirds of the costs and the balance to be borne by plaintiff.