The opinion of the Court was delivered by
Duncan J.
In order to comprehend the nature and object of the testimony excepted to, it will be proper to consider the office evidence of title, on the part of both the plaintiff and defendants.
The plaintiff gave in evidence, a warrant in the name of Patrick Mealy; for 100 acres of land, in Paradise township, of the 9th May, 1787, and a survey of the 20th September, 1787, of 42 acres 136 perches, by John Forsyth, the deputy surveyor of Fork county, including the land in dispute ; and a patent to Patrick Mealy, of the 29th September, 1788.
The defendants gave in evidence, a warrant of the 19th November, 1787, to Philip Moul, for 100 acres, including an improvement, interest to commence the 1st November, 1757; a survey returned by John Forsyth, of 120 acres, of the 18th 'April, 1788, and a patent on the 25th July, 1809. This survey and patent, do not include the lands in dispute ; and it would appear that the survey of Moul, included lands before surveyed for Jacob Giles. The defendants then offered and gave evidence of a possession by acts of ownership, cutting timber, coaling, and other acts, beyond the survey made’and returned for Moul, for 50 years and more ; and in order to shew that the survey returned for him, and patented by him, was made by mistake, gave in evidence, without opposition, the field notes, and draft of a survey, found in the office of the deputy'surveyor of the district of the 7th May, 1756, for Martin Eichelberger, by Thomas Armer, a well known agent of the deputy surveyor of that district, in right of Matthias Fritz, oi 112 acres, including the land in dispute ; and proved lines corresponding thereto on the ground ; and then offered in evidence, a paper containing the same figure and lines, with several indorsements deducing the chain of Fritz, down to Philip Moul. The first a transfer by Fritz to Eich *185 elberger, without date, and without consideration expressed. The second, bearing date 5th November, 1756: ger re-transfers to Fritz, in consideration of 14/. The 5th March, 1759, Fritz conveys with consideration expressed, to Abraham Geyger, and assignment without date from Geyger to Moul, and no consideration expressed. These were all excepted to, and admitted ; and this is the ground of the first bill of exceptions. To shew that Moul expressed his dissatisfaction with the official survey made for him, the defendant offered as stated in the second bill. The Court admitted these papers, and to this admission the plaintiff excepted.
It has been contended by the plaintiff in error, that these transfers were not evidence, inasmuch as there was -no evidence by subscribing witnesses or others, of the authenticity of these indorsements. But as possession accompanied these transfers for a term exceeding thirty years, they prove themselves. The antiquity and the correspondent possession give them authenticity. But there are more serious objections to the first and to the second transfer.
1st. That the party cannot give any evidence of title, before the 1st November, 1757, the day when interest commenced on his office right. And second., that there was no shadow of right in Fritz, when he assigned to Eicheiberger. No acts of a party,- who has by his application and warrant, fixed the inception of his claim, can give a scintilla of right. If Fritz or Eicheiberger had made an actual settlement before the 1st November, 1757, it could not be given in evidence, much less could evidence be received of a transfer previous thereto, without any evidence of settlement. As then there was no semblance of right on which the transfer could attach ; nothing which the transfer could operate on; such evidence must be irrelevant, and ought not to have been admitted. The doctrine, that you may give in evidence any deed, but that its operation is another thing, is long since exploded. This very question was decided in Eddy's lessee v. Faulkner, 3 Yeates, 580. The defendant in that case, offered in evidence, the assignment of the improvement claim, by John Wolff to John B. C. Lucas ; but, it being admitted that no actual settlement was made on the land antecedent to the survey made -for the plaintiff, the assignment was declared to be irrelevant. No actual settlement *186 subsequent to an adverse survey, can confer a title, or be received in evidence. It follows, therefore, that no transfer of it can be received. The transfer of a right, where right there was none, can never be received ; because if received, jt would have proved nothing. It was not necessary to establish boundary, because evidence was received of actual boundary lines run and marked on the ground, and evidence of possession by the defendant up to these lines and claimed by Moul as the lines of his claim. Evidence of actual boundary, not of an official survey, not to give title, but to ascertain the limits of the settlement was properly received ; but the evidence of a transfer before proof of settlement, and without any evidence of title ; transfer before the day which the defendant made the time of the inception of his title, was irrelevant, proved nothing, and therefore ought to have been rejected. Such testimony could only tend to waste the time of the Court, perplex, and mislead the jury.
The 2d bill, was an exception to the diagrams, or representations made by Mr. M‘Clean, of the survey made by Thomas Armer; of the survey made by Conrad Laub, for Moul, shewing the interference of Armer’s survey with the survey made for Healy, and of Laub’s survey, with a survey previously made for Jacob Giles. This was returned to John Forsyth, the deputy surveyor of the district, and filed by him as an official paper. This diagram was accompanied with an' offer to prove, that the survey made by Laub for Moul, included a part of a survey long before made for Jacob Giles, and excluded a part of Moul’s original settlement and purchase, which from the time of his purchase and settlement, had been uniformly and continually possessed by him, and was intended to prove a mistake in Laub’s survey j and that as soon as Moul discovered the mistake, he applied to the deputy surveyor to have the same corrected; who appointed M‘Clean a deputy surveyor, as his deputy to go to the land and ascertain the fact, who did so, and made the diagram and correction, returned to the surveyor general’s office, as a correction of it, who directed the surveyor of the district to proceed to a re-survey, which was suspended by the pendency of this suit. When the surveyor general made the order to re-survey, or what that order was, does not appear ; but whatever it was, it was issued after the commencement of the ejectment.
*187 The first presumption is, that every survey is made with the consent of the owner, if it is returned. That presumption is corroborated, if it is patented. It would require evidence of fraud and imposition by the surveyor, or by the adverse claimant, to let the owner take lands that had been appropriated to others. It would be opening a wide door, if at the end of 30 years, evidence were to be received, that all this was done in mistake, and land opened to a new survey, where it had been appropriated by grant and patent, for all that time. The laches and negligence of the party, when the act was his own, or adopted by him, could never be relieved against in a court of equity. I do not question the right of an owner to have his lines extended, if his warrant is not filled: nor do I doubt of the right of the deputy to alter his original survey, to throw out, or take in other lands ; provided this is done recently and does not interfere with mesne rights, between the time of the original survey, and the alteration, before the return. But when the survey is returned, the deputy is functus oficio, and it requires a new authority from the surveyor general, or the board of property, to warrant such alteration. 2 Sm. Laws, 255. What miserable confusion would ensue, if every deputy, after his survey returned, was at liberty to change the position of an actual survey, actually returned, and disturb intermediate grants. It is the duty of the owner, to shew the lands intended by his warrant to the surveyor; and the presumption of the law is, that he has shewn this, and that the survey has been made by his consent; and if a survey is made with which he is dissatisfied, he should, without delay, complain to the surveyor general, or board of property, and pray for redress; otherwise the survey will conclude him. 2 Sm. Laws, 256. Hunter's lessee v. Meason, 4 Yeates, 77. It cannot be presumed, that Moul living on the land, had not knowledge of the survey when made. It cannot be presumed, that Laub committed a fraud ; and if Laub even executed the warrant without the personal attendance of Moul, he became subject to his acts, and would be considered as his agent, unless there was some fraud. In Biddle's lessee v. Dougal, 2 Binn. 39, the law is thus laid down. The owner of an application has a right, before his survey returned, to extend his lines, so as to cover other lands not appropriated to another person; but he has not a right, after a lapse of time, to extend his lines *188 to lands, to the prejudice of a third person, even although he has been ill used by the surveyor, in making the original surveyor. And again in Evans’s lessee v. Nargong, 58, where a survey is returned, the owner has no right to make an addition, without an order from the land office; and no private intention, or act of his, could hinder the proprietary from selling the adjoining land to any person who might apply for it, and the Chief Justice in delivering the opinion of the Court, observes, we consider the law on this point to be settled, and if it were otherwise, it would be productive of great confusion, and great injustice. And in Miles’s lessee v. Potter, 2 Binn. 69, when a party makes an objection to his survey returned, he ought to follow it up, by application to the board of property ; for after survey returned, it is not in the power of the surveyor to make any alteration in a survey returned by him without a new authority. And in Nicholas’s lessee v. Holliday, 3 Yeates, 399, the lines of a survey may be extended before it is returned, where no inj ury is done to other claimants.
With these plain rules of evidence and of property before us, let us consider the state of these rights depending on official acts, evidenced by official returns, acted upon and adopted by Healy and by Moul, and confirmed by the final grants to both. Moul had the first inceptive right. His settlement might and would fairly have included these lands. But Healy had the first warrant and survey; his survey did ' include them, as his survey was made on the 26th September, 1/8/, and in November, 1/8/, Moul takes out his warrant for 100 acres, and on the 18th April, 1/88, by the same officer who executed Healy’s warrant and within one year after Healy’s survey, with the fresh lines of Healy in his eye, his survey is made, including 120 acres ; idling his warrant, and more than filling it; bounding it by Nealy’s survey, and on the 29th September, 1/88, Healy • takes out his patent. In October, 1/89, one year and a half after the application is made to M'-Clean or Forsyth, and the papers, thé diagrams, are returned to Forsyth. The survey made by M1 Clean is not returned ; the survey made by Laub and Moul on the 25th July, 1809, obtains a patent on Laub’s survey. Are these diagrams, as they are called, legal evidence ? They were offered as evidence of a re-sur\-ey made by the deputy surveyor, altering the lines and *189 Rectifying the mistakes of a former survey. After the survey made and returned for Healy; after the survey made for Moul, and the patent to Healy, the surveyor had no authority to make a re-survey to the injury of Healy, who patented the land after MouPs first survey. For it is not until after the patent, that Moul ever expressed his dissatisfaction, or applied to have the supposed mistake rectified.
If the survey of Moul was returned before the re-survey, as it is improperly called, the surveyor had no power or authority to extend the lines. But if it were not returned, the surveyor could not do it to the injury of Healy, who had in the meantime obtained his grant. This act would be a private one, and would not prevent the state from granting to another, if a private unauthorised act of the deputy. The papers being found in his office would not render it official; and if not an official act, it could not be received in evidence. If the former survey of Moul, was not returned into the office, before the second, then after the discovery of the mistake, he obtained the return, and abandoned again the land included in Armer’s survey, and recognised the right of Healy. If, by mistake, he neglected to caveat Healy1s survey ; if, by mistake, he excluded the lands in his own survey ; and if, after discovering his mistake, and the correction of it, he made another mistake, in obtaining the return of the erroneous survey, and took out his patent, it would be a complication of errors, difficult to be accounted for, and never could affect an innocent purchaser, who perfected his title by a patent. It would be inconsistent with every principle of equity, that after such a series of mistakes committed by a party for 21 years, he could be enabled under the excuse of ignorance and error, to set aside all the solemn acts of surveys, returns, patents, and although in 1809, he had, with full knowledge, taken out his patent, he should be permitted to return back to a survey made without authority near fifty years before. Ascertaining the boundaries by a settler, to shew the courses and extent of his pretensions and inheritance, either by consentable lines made by the owners of the adjoining lands, or by lines run or made, is usual and proper. But when he comes to appropriate by survey on his office right, he may abandon this, he may .change its position, and include other land not occupied by other rights, and if he does this by survey made hy the proper officer, he *190 Cannot again return to his original boundaries, if in the meantime the lands have been appropriated by others, because he cannot hold the lands which he has claimed, in place of those he has thrown out by his survey. These papers were improperly received in evidence. They were private, unauthorised acts, and no matter where they were found, do not fall within the rule, admitting official papers found in the office of a deputy surveyor to be received in evidence.
Judgment reversed.