Ridgeley *v.* Johnson.

———◇◇◇———

11b 527ı
32ap500

RIDGELEY *vs.* JOHNSON and others.

The power of trustees, over the subject matter of the trust, is equal and undivided. They can not, like executors, act separately; all must join, both in receipts and conveyances.

A deed in the names of, and purporting to be executed by, three trustees of a trust in lands, appeared, upon its production, to have been in fact executed by only two of the trustees. The trustee who did not execute the deed had been appointed only a few months previous to the date of the deed. *Held* that inasmuch as the deed, upon its face assumed that he was still alive, and he was named as one of the grantors therein, the presumption was that he was alive at the date of the deed, and that a party claiming under the deed, in order to avail herself thereof, by showing authority in two trustees only to execute it, was bound to prove that such third trustee was dead at the time the deed was executed by the others.

A memorandum, found on the flyleaf of the book of records of a town, which speaks of the wife of H. as his *widow*, and refers to an examination in respect to trust property of the town, which had been in the hands of H. as a trustee, made by his co-trustees, which memorandum forms no part of the record properly made by any person whose duty it was to make entries in the book; and with nothing to show by whom, or under what circumstances, it was made, is no evidence of the death of H.

A memorandum, indorsed by the surveyor, upon the field book of a survey, is not admissible evidence to prove the death of a person; it being nothing more than the written declaration of a third person, in respect to a matter with which he had nothing to do.

In every instance in which an entry or memorandum made by a third person has been received in evidence against others, it has been where the entry or

memorandum related to some act performed by the party making it, in the discharge of his duty, and in the usual course of his business.

The mere existence of a deed for more than thirty years, without any proof of accompanying possession, is not enough in any case to authorize it to be read in evidence as an ancient deed, without proof of its execution.

This was an action to recover damages for unlawfully entering upon the plaintiff's land and cutting and carrying away timber. It was tried at the Sullivan circuit, in September, 1850, before Mr. Justice Watson.

The complaint stated that the plaintiff being the owner and in possession of subdivision lot No. 47, in the middle allotment of great lot No. 4, of the Hardenburgh patent, in the town of Neversink, the defendants, on the 10th day of June, 1849, entered &c. The defendants denied that the lands were situated in or belonged to, or formed any part of the Hardenburgh patent, and averred that they were situated in, and formed a part of the Rochester patent; and that at the time when &c., they were owned by, and in the possession of one Neal Benson, under whom &c. Upon these allegations in the answer issue was joined.

Upon the trial the plaintiff gave in evidence the Rochester patent, bearing date the 25th day of June, 1703, whereby there was granted to Colonel Henry Beekman, Captain Joachim Schoonmaker and Moses De Puy, their heirs and assigns forever, " all that tract or parcel of land, lying and being in the county of Ulster and beginning at the south bounds of the lands now in the possession of John Van Camps: from thence running with a southeast line to the land of Captain John Evens, and so along the north bounds of the said Captain John Evens, his land, till you come against the sand hills : from thence with a northwest line to the great mountains, commonly called the *blue hills. Thence northeast something northerly along the said hills to the bounds of Marbletown ;* and from thence along the bounds of Marbletown to the place where first began." To have and to hold &c., " *in trust,* nevertheless, for themselves and all the freeholders and inhabitants for the time being of Rochester aforesaid, formerly called Mombachus : to be by them, the said Henry Beekman, Joachim Schoonmaker and Moses

Ridgeley v. Johnson.

Du Puy, the survivor or survivors of them, managed, used, ordered, let, sold or disposed of in part or in the whole, for the good benefit and advantage of the said freeholders and inhabitants, from time to time, in such manner and sort, and in such parts and proportions, as by them the said Henry Beekman, Joachim Schoonmaker and Moses De Puy, the survivor or survivors of them, by and with the advice of two of the principal freeholders and inhabitants aforesaid shall be thought fit and convenient." And upon the further trust to convey all of the lands, not otherwise sold and disposed of by them, " unto three such other persons, their heirs and assigns, in fee simple, as shall be elected and chosen trustees of the said lands and premises by a majority of the voices of the freeholders and inhabitants of Rochester aforesaid, formerly called Mombachus, upon the first Tuesday of June next, which will be in the year of our Lord 1704, upon the like trusts and confidences as the same lands and premises are hereinbefore mentioned to be granted to them the said Henry Beekman, Joachim Schoonmaker and Moses De Puy, their heirs and assigns as aforesaid. And we hereby declare our royal will and pleasure to be, and do further order and appoint that the said freeholders and inhabitants of Rochester aforesaid, formerly called Mombachus, for the time being, shall annually meet together, on the first Tuesday of June, forever, to elect and choose trustees as aforesaid, for the managing, ordering and disposing of the said lands : and that the trustees of every preceding year, so chosen and elected as aforesaid, the survivor or survivors of them, having the said lands granted and conveyed to them in manner and form aforesaid, shall annually and successively, forever, in like manner grant and convey the said lands, unto the trustees of the next succeeding year, so to be elected and chosen as aforesiad."

The plaintiff also gave in evidence the Hardenburgh patent, bearing date the 20th of April, 1708, granting to Johannis Hardenburgh and six others, a tract of vacant and unappropriated land adjoining the Rochester and other patents on the northwesterly side, thus making " *the great mountains commonly called the blue hills,*" the dividing line between the two

patents. The plaintiff then gave in evidence a series of conveyances and devises, showing that in April, 1849, she became the owner of lot No. 47, in great lot No. 4 of the Hardenburgh patent. But it was also proved that assuming the blue hills to be the dividing line of the two patents, the lot claimed by the plaintiff to be lot No. 47, in great lot No. 4 in the Hardenburgh patent was, in fact, within the Rochester patent.

The plaintiff also gave in evidence a deed, bearing date the 13th day of February, 1778, which, upon its face, purported to have been made " between *Colonel Jacob Hoornbeck,* Andreas De Witt, Esq. and Capt. Joachim Schoonmaker, jun. the present trustees of the lands and premises of the town of Rochester, Benjamin Hoornbeck, Hendrick Hoornbeck and Johannis Osterhout, jun. freeholders of said town, *of the one part,* and Colonel Johannis Hardenburgh, of Rosendale, in the county of Ulster, Robert R. Livingston, Esq. of Dutchess county, Samuel Verplanck, late of the city of New-York, merchant, now residing at Fishkill, in the said county, *of the other part,* reciting that whereas doubts have arisen between the trustees of the said town of Rochester, and *the proprietors* of the Hardenburgh patent, relative to the true bounds of the said town of Rochester, on which bounds the Hardenburgh patent is butted and bounded. In order, therefore, to reconcile these doubts, the said trustees of the said town, together with Benjamin Hoornbeck, Hendrick Hoornbeck and Johannis Osterhout, jun. three assistant freeholders, chosen by the freeholders of the town at their annual election, held on the 4th day of June, 1776, did, after several meetings with some of the proprietors of the said Hardenburgh patent, on the 21st day of June, 1776, mutually conclude and finally agree on certain lines to be run for the true bounds of Rochester, saving and reserving certain lands thereinafter mentioned to the assigns of the trustees of the said town. And whereas, by the mutual consent of the parties, and in the presence of some of them, William Cockburn and John Wigram did, in the month of November following, run and mark out the lines agreeable to the said agreement, which are as follows, viz. : Beginning, &c. which lines so run and marked out,

Ridgeley *v.* Johnson.

are to be held and esteemed forever hereafter as the true bounds of the town of Rochester, *only with respect to the parties of the second part, their respective heirs and assigns ;* saving and reserving, nevertheless, the several tracts of land thereinafter mentioned. This deed purports to convey to the parties of the second part, their heirs and assigns forever, all the lands to the southwest and northwest of the said agreement lines, that lie within the limits and bounds of each and every of their respective lots or parts or parcels of lots, that are claimed by the said parties of the second part, *by reason of their being proprietors and part owners of the said Hardenburgh patent,* and all such right, estate, title, interest and demand whatsoever, as they the said parties of the first part had or ought to have, by reason of their being trustees of the lands and premises of the town of Rochester as aforesaid. To have and to hold, &c. By the same deed the parties of the second part, for and in consideration of the premises, released to the parties of the first part, their heirs, successors and assigns forever, all the lands, &c. that lie between the Sandbergh and the bounds of Marbletown, within and to the eastward of the said agreement lines, so run and marked out as aforesaid, so far as each and every of the said parties of the second part have a right in these respective lots, by being proprietors and part owners of the Hardenburgh patent.

This deed was executed by only two trustees, Andreas De Witt and Joachim Schoonmaker, jun. Jacob Hoornbeck, described in the body of the deed as one of the trustees and a party to the deed, did not execute it. A place for his signature, with a seal, was left vacant. The deed was acknowledged by William Cockburn, a subscribing witness, on the 17th of February, 1778, and recorded on the 25th of the same month. The defendants objected that this deed was not properly proved to be read in evidence, because the subscribing witness did not state that he knew the parties to be the persons described in the instrument, and because there was no evidence of the special character of the parties as trustees. They further objected to the admission of the deed in evidence on the following grounds :

1. Because it was full of erasures and interlineations, not noted
or explained, and because a leaf had evidently been cut out
and replaced. 2. There was no proof that the three professed
assistants, or freeholders, were such, and therefore a majority
of those acting for the town had no authority so to act. 3. The
deed was executed by but two of the three trustees named in
the body of it. The trustees were joint tenants, made so by the
Rochester patent and the law, and had no authority to sever the
joint tenancy by the separate conveyance of two of them. The
power of sale and disposition in the trustees was a joint power,
and could not be exercised without the concurrence of all. 4. The
instrument showed that the two trustees, being mere naked trus-
tees, without any beneficial interest in the lands, *gave away* a
large portion of the lands of the town which they had no right
to do, and the deed was therefore void. 5. The deed was void
as a bargain and sale, for want of a consideration expressed in
it. The only consideration was land which they were supposed
to get from the Hardenburgh patent, and which they could not
hold if it lay in that patent. 6. One of the stipulations of said
agreement was unlawful, as altering the bounds of the town.
The objections were overruled, and the deed was admitted in
evidence. The defendants' counsel excepted to the decision of
the court.

The plaintiff then offered in evidence a counterpart of the
deed, claiming to give the same in evidence as an ancient deed
and a muniment of her title, to which the defendants took the
same objections as to the original deed.

The plaintiff also offered in evidence, as an ancient deed and
muniment of title, a paper purporting to be an agreement be-
tween the trustees of the town of Rochester and some of the
proprietors of the Hardenburgh patent, bearing date the 21st
of June, 1776. This paper purported to be signed by two of
the Hardenburgh proprietors, the three trustees of the town of
Rochester, and two of three persons who had been appointed *a
committee* to join and consult with the trustees, in order to set-
tle the boundaries. It set forth an agreement that a certain line
should be run and monuments erected, and that the trustees of

Rochester and the owners of the Hardenburgh patent, *as many as could be found,* should release to each other at a joint expense. The execution of the paper was witnessed by Samuel Hoornbeck. The defendants objected to the admission of this paper in evidence, for the following reasons : 1. Because it was materially erased and altered as to date, parties and boundaries, which erasures and alterations were not noted or explained. 2. It was incomplete and inoperative. It speaks of an agreement but does not say who agrees, of a line not run, but afterwards to be run. It does not say what it is to be the line of, and several of those who, by the terms of the instrument, are to be bound by it, and to unite in its performance, have never signed it. 3. It is unsealed and wholly without any consideration expressed in it, except the settlement of a boundary line, and not signed by, or intended to be signed by, the parties necessary to settle the boundary. It is wholly without consideration and inoperative on its face. 4. The trustees were mere naked trustees, holding the mere legal title to the land, without any interest of their own in it. They had no right to part with it, without getting any thing in return. The persons to whom land is so given, have no power to hold it. 5. Being mere naked trustees, they had no power to settle the boundaries. 6. It being a mere executory agreement, there could be no possession under it, the possession, if any, being under the deed. 7. The plaintiff was bound to produce Hunter, in whose custody the agreement was shown to be. 8. The plaintiff was bound to produce the subscribing witness, or show that he was dead. The defendants also offered to show that the witness to the agreement was still alive, and called a witness to prove it. The paper was received in evidence, and the defendant's counsel excepted.

For the purpose of showing that Col. Jacob Hoornbeck was dead, at the time of the execution of the settlement deed, the plaintiff offered in evidence a memorandum found on the fly leaf of the book of records, of the town of Rochester, as follows : " 1778, April 10th. We, Andreas D. Witt, Esq. and Joachim Schoonmaker, jun. esq. have taken a view of the books and papers of the trustees, at *the widow of Col. Jacob Hornbeck*

and Ludowick Schoonmaker, and found in the presence of Jacob Hornbeck, in bonds and bills, as follows :" (mentioning several bonds and bills.) The defendants' counsel objected to the admission of this evidence, on the ground 1. That it was a mere unsworn memorandum, not made by party or privy, and not a proper subject of entry in the book where it appeared. 2. It contradicted, as far as it proved any thing, the settlement deed under which the plaintiff claimed, that deed stating that Hoornbeck was alive. 3. It was written on the first fly leaf and not in the order of the book. The evidence was received and the defendants' counsel excepted.

The plaintiff offered in evidence, for the same purpose, a memorandum in the hand-writing of William Cockburn upon the back of a field book of the survey of the settlement line, made by himself and John Wigram, in the following words and figures : " Field notes of the lines run for the boundary between Rochester and the Hardenburgh patent, 1776." So much of the memorandum was on the field book found among the papers of the town of Rochester, as well as that produced by the plaintiff. The following was indorsed on the plaintiff's copy of the field book only : " The releases were executed on the 13th of February, 1778, by A. D. Witt and Joachim Schoonmaker, the present trustees, (Colonel Jacob Hoornbeck, the other, died in Jany.) Hendk. Hoornbeck, Benjamin Hoornbeck and John Osterhoudt, jun. assistant freeholders, and by Col. Johannes Hardenburgh, Samuel Verplanck and Robert R. Livingston." The defendants' counsel objected to this evidence, on the ground 1. That it was a mere unsworn memorandum, not made by a person whose duty it was to make it, and not a proper subject of entry where it appeared. 2. It contradicted the settlement deed under which the plaintiff claimed—that deed stating that Hoornbeck was alive. 3. It came from the custody of those who claimed the benefit of it, and was made by their agent, and there was no evidence when it was made. The objections were overruled, and the defendants' counsel excepted to the decision.

The plaintiff having rested, the defendants called witnesses to show that at the time the settlement deed was executed, Col.

Ridgeley *v.* Johnson.

Jacob Hornbeck was living ; also to show that the settlement line described in the deed was several miles easterly from the base of the blue hills. The defendants alledged, and the evidence tended to support the allegation, that by the settlement deed, 164 square miles, embracing 105,000 acres, were cut off from the Rochester patent.

The judge charged the jury, in substance, that if at the time the settlement deed was executed, Col. Jacob Hornbeck was dead, the deed was properly executed by the survivors, and would be effectual to establish the settlement line, and thus sustain the plaintiff's title ; that if Hornbeck was alive when the deed was executed, then it was void for want of due execution. That if the jury should be of opinion that the memorandum made by Cockburn on the plaintiff's copy of the field book, was made before, or at the time the deed was executed, then it was competent evidence to prove the death of Hornbeck ; but if made after the deed was executed, then it was not admissible evidence for that purpose ; that the memorandum on the fly leaf of the town records was also competent evidence for the jury to consider in determining whether Hornbeck was dead when the deed was executed. The defendants' counsel excepted to that part of the charge in which it was stated that if the deed was executed by two trustees, the third being dead, the deed was valid and established the settlement line. The jury found a verdict for the plaintiff for five dollars damages. Upon a case containing these, with other facts, the defendants moved for a new trial.

*J. C. Spencer*, for the plaintiff.

*A. Taber*, for the defendants.

*By the Court*, HARRIS, J. The judge, at the circuit, was undoubtedly right in holding that the settlement deed, executed as it was by only two trustees, was void, if the third trustee was in fact living at the time of execution. The power of trustees over the subject matter of the trust, is equal and undivided. They can not, like executors, act separately—all must join, both

in receipts and conveyances. Thus, where a testator gave his estate to two trustees for certain purposes, and, in case one died, authorized the survivor to execute the trust, the refusal of one to act prevented the other from acting during their joint lives. So where a power of sale was given to three trustees, without authority to the survivors, in case of the death of one, it was held that such survivors were incompetent to act without a new appointment. ( *Willis on Trustees*, 136, *and cases there cited.*)

In this case the patent contained authority for the surviving trustees to execute the trusts, in case of the death of one; so that if Col. Jacob Hornbeck was dead, on the 13th of February, 1778, the settlement deed might legally have been executed by the survivors; but if he was alive, his execution of the deed was as necessary as theirs, to constitute a valid conveyance. It became, therefore, important to determine upon the trial, whether Col. Hornbeck was alive when the deed was executed. Upon this question I think the burden of proof rested upon the plaintiff. The trustees were to be chosen annually. Col. Hornbeck had been elected one of the trustees, in June, previous to the date of the deed. He was, of course, then alive. The deed, upon its face, assumes that he was yet alive, and makes him a party to the conveyance. Under these circumstances it was necessary for the plaintiff, in order to avail herself of the benefit of the deed, to show that Hornbeck was really dead when the other trustees executed it. This she attempted to do. For this purpose she offered in evidence a memorandum, found on the fly leaf of the book of records of the town of Rochester, which speaks of the wife of Col. Hornbeck as his widow, and refers to an examination which the other trustees had made in respect to the trust property which had been in the hands of Hornbeck. This memorandum bears date the 10th of April, 1778. There is no evidence to show by whom, or under what circumstances it was made. It formed no part of the record properly made by any person, whose duty it was to make entries in the book. Indeed, it was not entered as any part of the record. The fact of its being found on the fly leaf imparts to the memorandum no more effect as evidence than it would have had if found upon

Ridgeley v. Johnson.

any other paper in the hands of the officers of the town. All that can be said of it is, that somebody, no one knows who, at some time, no one knows when, for some purpose, no one knows what, not as a record, not in the course of business, nor in the discharge of any duty, has seen fit to make this memorandum. I know of no rule of evidence, nor any precedent which would allow such an entry to be made use of as proof, to show that, on the 13th of February, 1778, Col. Hornbeck was not alive. I think it should not have been admitted.

Nor do I think the memorandum indorsed by Cockburn on the field book admissible evidence to prove the death of Hornbeck. It is nothing more than the written declaration of a third person, in respect to a matter with which he had nothing to do. The general rule is, that such declarations, though he by whom they were made is dead, can not be given in evidence. It can not be known that he was under any strong motive to speak the truth. It is true that what a man has himself *actually done*, and committed to writing, he being under an obligation to do the act, and it being done in the discharge of his duty, may be submitted to a jury as evidence that the act, thus committed to writing, was in fact performed. "The general principle," says Story, J. in *Nichols* v. *Webb*, (8 *Wheat.* 326,) "is, that memorandums made by a person, in the ordinary course of his business, of acts or matters which his duty, in such business, requires him *to do* for others, in case of his death, are admissible evidence of the acts and matters so done." (*See also Welsh* v. *Barrett*, 15 *Mass. Rep.* 381; *Halliday* v. *Martinet*, 20 *John.* 172.) Thus, the entries of clerks, of what they have done in the usual course of their business, have been received to prove the facts stated in those entries, when the clerks who made them are dead. (1 *Stark. Ev.* 315.) An entry made by a notary, of what he has done in the customary business of his office, may be evidence of his acts when he is dead. So, the memorandum made by a bank messenger, in the usual course of his employment, stating a demand of payment and notice to an indorser, is admissible as evidence of such demand and notice, when he is dead. Other cases might be mentioned, in which such entries have been

received in evidence; but, in every instance, it has been where the entries related to some act performed by the party making them, in the discharge of his duty, and in the usual course of his business. To extend the rule beyond this limit, would be contrary to the most obvious principles of justice.

It is true, the learned judge instructed the jury to disregard the evidence, if they should be of opinion that the memorandum was made after the deed was executed. How the jury were to determine this question I am unable to perceive. There is nothing in the case to show when Cockburn made this memorandum. He might have made it at the time the deed was executed, and he might equally well have made it twenty years afterwards. But, whenever made, it was not competent evidence to prove the death of Hornbeck. It was not made in the discharge of any duty. It related to no act which Cockburn himself had performed. The same memorandum, made by any other man, would have been equally admissible.

Rejecting the evidence derived from the memorandum made by Cockburn, and the entry upon the fly leaf of the town records, I do not perceive that any evidence is left, to overcome the presumption that Hornbeck was alive when the deed was executed. The deed, therefore, was not shown to have been duly executed. Upon the principles stated by the learned judge himself, in his charge to the jury, and with entire accuracy, the deed itself should not have been submitted to the jury as furnishing any evidence of a conveyance by the trustees of Rochester to the proprietors of the Hardenburgh patent. It was void, for the want of due execution.

I think, too, that the settlement agreement of the 21st of June, 1776, ought not to have been received without proof. It was admitted as an ancient deed or muniment of title. The mere existence of any instrument for more than thirty years is not enough, in any case, to authorize it to be read in evidence. Kent, Ch. J. in *Johnson* v. *Blanshaw*, (3 *John.* 292,) says, " It is the accompanying possession alone which establishes the presumption of authenticity in the ancient deed. Where possession fails, the presumption in its favor fails also. The length of the

Ridgeley *v.* Johnson.

date will not help the deed, for if that was sufficient a knave would have nothing to do but to forge a deed with a very ancient date. (*See also Healy* v. *Moule,* 5 *Serg. & Rawle,* 185 ; *Mc-Ginnis* v. *Allison,* 10 *Id.* 197.) The theory upon which such evidence is allowed is stated by Starkie with remarkable clearness and felicity of language as follows : " Presumptions are frequently founded upon, or at least confirmed by ancient deeds and muniments, found in their proper legitimate repositories, although, from lapse of time, no direct evidence can be given of their execution, or of their having been acted upon. It seems, however, that in order to the reception of such evidence, or at least to warrant a court in giving any weight to it, *a foundation should be first laid for its admission by proof of acts, possession or enjoyment,* of which the document may be considered as explanatory." (1 *Stark. Ev.* 66.) So Gilbert says, " If possession has not gone along with it there should be some account of the deed, because the presumption fails where there is no possession, for it is no more than old parchment, if no account be given of its execution." (*Gilb. Ev.* 103. *See also Norris' Peake,* 163 ; *Jackson* v. *Laraway,* 3 *John. Cas.* 283 ; *Hunt* v. *Luquere,* 5 *Cowen,* 221.)

*Middleton* v. *Mass,* (2 *Nott & McCord,* 55,) was, like this, an action of trespass to try the title to a tract of land. The plaintiff produced a deed, dated in 1739, which had been proved before a magistrate and recorded in the auditor's office a few days after its execution. He offered no proof of its execution, nor did he prove any possession of the land, or any acts of ownership over it, so that the question was whether it was admissible as an ancient deed, without proof of its execution. The presiding judge being of the opinion that it was not, the plaintiff offered to prove that the deed had been in possession of himself and those under whom he claimed, for more than thirty years, and contended that it ought to be admitted on this proof. But the judge thought otherwise, and the plaintiff was nonsuited. A motion was made to set aside the nonsuit, on the ground that the deed ought to have been received in evidence as an ancient deed, on the proof of the possession of the deed

Ridgeley *v.* Johnson.

alone for the time mentioned. The motion was denied. Johnson, J. in delivering the opinion of the court said, "It is not the place only where an ancient deed is found that always makes it evidence, *but it is when the possession is according to the provisions of the deed.*"

In this case, as I understand the facts, it is not pretended that there has been such a possession as would furnish a presumption of the authenticity of the instrument from that source alone, even if it were an instrument which, if proved, would sustain a claim of title. It was necessary, therefore, before it could be read in evidence, that some proof of its execution should be adduced. It was proved that the subscribing witness to the agreement was still alive and residing in this state. No reason was given why he was not produced. I think the omission was a fatal negligence on the part of the plaintiff.

I am inclined to think that the instrument was also objectionable on account of the alterations appearing upon its face, but I do not sufficiently understand the materiality of those alterations to express an opinion upon this question. The rule on this subject, as stated by Phillips, is that, "if there is any blemish in the deed by rasure or interlineation, the deed ought to be proved, though above thirty years old, and the blemish satisfactorily explained. (1 *Phil. Ev.* 477. *See also* 1 *Stark. Ev.* 344. *Buller's N. P.* 255. *Jackson* v. *Osborn,* 2 *Wend.* 555. *McMicken* v. *Beauchamp,* 2 *Miller's Lou. Rep.* 290.) In the latter case the court take the broad ground that writings erased or interlined are presumed to be false. (*Provost* v. *Gratz,* 1 *Pet. C. C. R.* 364. *Morris' Lessee* v. *Vanderen,* 1 *Dall.* 64.)

For these errors in the admission of evidence, a new trial must be awarded. If upon that trial the plaintiff shall succeed in overcoming the difficulties already noticed, other questions of very grave importance, may arise, some of which were discussed with great learning and diligence by the very able counsel who argued this motion, but the decision of which is neither necessary nor appropriate to the proper disposition of the application.                    New trial granted.

[ALBANY GENERAL TERM, Sept. 1, 1851. *Harris, Watson* and *Wright,* Justices.]