536 PEOPLE ex rel. CAMPBELL *v.* COMRS. OF TAXES.

FIRST DEPARTMENT, JANUARY TERM, 1886.

THE PEOPLE OF THE STATE OF NEW YORK ex rel.
JACOB CAMPBELL and Others, as Executors, etc., of
SAMUEL HAWK, Deceased, *v.* THE COMMISSIONERS
OF TAXES AND ASSESSMENTS OF THE CITY OF
NEW YORK.

*Taxation — assessment of personal property held by executors, where some are non-residents.*

The relators, Campbell, Moss and Hawk, as executors and trustees of Samuel Hawk, deceased, applied to have an assessment of $400,000 for personal property held by them, as such executors and trustees, reduced to the sum of $35,000. Moss averred, in an affidavit, that he was a resident of Sandusky, Ohio, and that for more than six months prior to April 22, 1885, he was the sole acting executor and trustee of the estate, and had sole possession and control of all the property and assets of the estate, except the sum of $35,000, which was invested in the business of the Windsor Hotel, in New York city; that no other portion of the assets was invested in business in the State of New York.

Campbell alleged that, after qualifying as executor and trustee, he became unable, by reason of illness, to attend to his duties, and that for a period of more than eight months next prior to and including the second Monday of January last past, none of the funds or property of the estate of said deceased were in his possession or under his control.

Hawk alleged that, in October, 1884, after qualifying as executor and trustee he was compelled by ill-health to give up all business, and that from that time until April 25, 1885, he was continuously absent from the State, and that during his absence he was not in possession or control of any of the property or assets of the estate.

The testator died in the city of New York in 1882, and his will was there proved. *Held,* that the application for a reduction of the assessment was properly denied, by the commissioners.

CERTIORARI to review an assessment for the purposes of taxation for the year 1885.

*Henry W. Johnson,* for the relators.

*Albert L. Cole,* for the respondents.

BRADY, J. :

Samuel Hawk, the testator, late of this city, died here in August, 1882. His will was proved before the surrogate of this county, and letters testamentary were issued to Jacob Campbell, Jay O. Moss

and William S. Hawk, the relators, who duly qualified as executors and trustees and entered upon the discharge of their duties.

In the present year the relators were assessed in respect to the personal property held by them, as executors and trustees, in the sum of $400,000. Subsequently, and during the period allotted for that purpose, an application was made for a reduction of the assessment to the sum of $35,000, in support of which there were submitted the petition of the relator Moss and the affidavits of the other relators. Mr. Moss averred that he was a resident of Sandusky, Ohio, and that for more than six months prior to April 21, 1885, he was the sole acting executor and trustee of the estate, and had sole possession and control of all the property and assets of the estate, except the sum of $35,000, which was invested in the business of the Windsor Hotel in this city, and that no other portion of the assets was invested in business in the State of New York. Mr. Campbell alleged that he was appointed an executor and trustee under the will of Samuel Hawk, deceased, and duly qualified as such; that afterwards he became unable, by reason of illness, to attend to his duties, and for a period of more than eight months next prior to, and including the second Monday of January last past, none of the funds or property of the estate of said deceased were in his possession or under his control.

Mr. Hawk asserted that he was appointed executor and trustee under the will of Samuel Hawk, deceased, and duly qualified as such; that in October, 1884, he was compelled by ill-health to give up all business, and from that time until the twenty-fifth of April last was continuously absent from the State; and that during his absence he was not in possession or control of any of the property or assets of the estate.

The commissioners of taxes and assessments gave due consideration to the application thus made, and arrived at the conclusion that the mere temporary absence of the two executors and trustees above mentioned did not absolve them from liability to taxation, they therefore denied the application and affirmed the assessment. The Revised Statutes (vol. 2 [7th ed.], p. 989) provide as follows:

"Sec. 5. Every person shall be assessed in the town or ward where he resides, when the assessment is made, for all personal estate owned by him, including all personal estate in his possession or

under his control as agent, trustee, guardian, executor or adminis-trator, and in no case shall property so held under either of those trusts be assessed against any other person."

It will be observed that the assessment is to be imposed upon all personal property in the possession or under the control of a person who is an agent, trustee, guardian, executor or administrator. And it will be further noted that the averment of the relator Moss in ref-erence to the possession of the property is that no part of it is now or during the past year has been employed or invested in business in the State of New York, save so much as was invested in the business carried on by the firm of Hawk & Wetherbee; and that this does not negative the presumption that the entire estate is located in the city of New York. It {may very well consist of securities not invested or employed in any business in the city of New York, but which were, nevertheless, in the city of New York. The application of the relators, it will be noted, fails to show what was done with the rest of the personal estate. It does not appear from it that any portion of the estate was located in another county or State, and the inference fairly to be drawn from their statements, respectively and collectively, is that the personal estate passed into the hands of the non-resident executor only when it became neces-sary for the resident executors, one after the other, to leave the State or give up the business of the estate temporarily, which rendered it a necessity for the non-resident executor to take physical possession solely and exclusively. The mere fact that the estate was not in the actual possession of the executors, absent or ill, and was in the possession of the acting executor, furnishes no evidence of the absence of that kind of possession which is contemplated by the statute. The language of the statute embraces all personal property in possession of a person or "under his control as agent, trustee, guardian, executor or administrator."

It must be regarded as a fair conclusion, from the application of the relators, that the absent executors failed only to have actual possession of the personal estate, and that during their absence. There is no evidence of any transfer of it to any other place, except what may be inferred from the circumstance that the foreign execu-tor took possession. But this was a possession for the use of the estate and its beneficiaries, and in no sense deprived the other execu-

tors of that legal custody and possession resulting from their relation to it as executors and trustees. As said in *Murray* v. *Blatchford* (1 Wend., 616), by Chief Justice Savage: " If a man appoints several executors, they are esteemed in law but as one person representing the testator, and, therefore, the acts done by any one of them, which relate either to the delivery, gift, sale, payment, possession or release of the testator's goods, are deemed the acts of all, for they have a joint and entire authority."

It is contended, also, and the contention is justifiable, that " where the administration of the trust is vested in co-trustees, they all form, as it were, but one collective trustee, and, therefore, must execute the duties of the office in their joint capacity. It is not uncommon to hear one of several trustees spoken of as the acting trustee, but the court knows no such distinction; all who accept the office are, in the eye of the law, acting trustees." (Lewin on Trusts [7th ed.], 236, and cases cited; see, also, *Ridgeley* v. *Johnson*, 11 Barb., 527; *Thatcher* v. *Candee*, 33 How. Pr., 145; *Brinckerhoff* v. *Wemple*, 1 Wend., 470.)

In addition to this, it must be said that the legal presumption is that the personal property of a decedent, during the settlement of the estate, is at the place where the decedent lived, unless the contrary affirmatively appears. (Burrough on Taxation, p. 224; Desty on Taxation, § 68, p. 332.) Indeed, it is a natural presumption as well.

The case of *People ex rel. Caswell* v. *Commissioners of Taxes* (17 Hun, 293) is entirely different from the present case, and furnishes no reason why the appeal of the relator should be sustained. It appeared in that proceeding that the testator lived and died in Westchester county, and that his will was admitted to probate there; that the personal property was located there; that four of the executors resided in that county, and that the property was in their physical possession. This statement is quite sufficient to show the essential difference between this and that proceeding. None of the cases to which the learned counsel for the relators refers, and who has ingeniously presented his points on the appeal, in any way conflicts with the views herein expressed. It may be said, in conclusion, that to sustain the proposition urged on behalf of the relators would perhaps enable a combination of foreign and domestic execu-

tors to employ the estate *inter sese* in such a way as to avoid taxation. It is not designed by this suggestion to intimate that the relators would be guilty of such a scheme; but cases might arise in which it would be attempted.

For these reasons, we think, the action of the commissioners should be affirmed, with costs.

DAVIS, P. J., and DANIELS, J., concurred. ·

Proceedings affirmed, with costs.