(32 App. Div. 496.)

## In re HAIGHT.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

1. TAXATION OF ESTATE—RESIDENCE OF EXECUTOR.

   If an executor, residing in a town in which the testator lived, is there assessed for an equal share of the taxable personal property of the estate, under Laws 1896, c. 908, § 8, he cannot escape liability by showing that his co-executor, residing in another tax district, has been in exclusive management of the entire estate, in accordance with a mutual agreement between them; for he is nevertheless still in control of the property, within the meaning of the statute.

2. SAME—EXEMPTIONS.

   The provision of Laws 1896, c. 908, § 4, subd. 14, exempting from taxation the deposits in any savings bank which are due to depositors, does not exempt the depositor, but only the bank.

Appeal from special term.

In the matter of the application of Israel A. Haight, supervisor of the town of Newcastle, for an order directing the payment of a tax, and for judgment against Wesley Barnes and Richard P. Barnes, as administrators of the estate of David W. Barnes. From an order enforcing payment of the tax, the administrators appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and WOODWARD, JJ.

Henry C. Griffin, for appellants.

A. J. Adams, for respondent.

WOODWARD, J. David W. Barnes, of the town of Newcastle, died seised of a considerable estate, and left, him surviving, three brothers, next of kin, who each qualified as administrators of his estate. Two of these brothers (Richard and Wesley Barnes) reside in the town of Newcastle, and Noah T. Barnes, since deceased, resided in the town of Ossining. In 1896 the assessors of the town of Newcastle assessed two-thirds of the personal property of said estate to J. Wesley Barnes and Richard Barnes, as administrators, as provided by section 8 of the tax law (chapter 908 of the Laws of 1896). On the day set apart for the review of the assessment rolls of the town of Newcastle, J. Wesley Barnes appeared before the assessors, and made an affidavit, in which he stated: That—

"The personal estate of said David W. Barnes consisted entirely of moneys on deposit in various savings banks in the state of New York, except household furniture, farming utensils, and stock. That such personal estate of the said David W. Barnes was all appraised, and an inventory made and filed in the office of the surrogate of the county of Westchester, on the 23d day of March, 1896, and, as appears from such inventory, the amount of personal estate of the said David W. Barnes, other than moneys on deposit in savings banks, amounted to twelve hundred and forty-seven $50/100$ dollars. That the administrators on the 16th day of May, 1896, paid to the county treasurer of the county of Westchester the sum of eight hundred and twenty-five dollars and eighty cents, tax appraised and assessed against said estate of David W. Barnes by the surrogate of the county of Westchester, and an appraiser duly appointed under chapter 399 of the Laws of 1892; and, as this deponent is informed and believes, the personal estate of the said David W. Barnes, consisting of money on deposit in savings banks, is not subject to assessment or taxation by the assessors of the town of New-

castle. That the debts of the said David W. Barnes, and the expenses of settling the estate, will exceed the sum of twelve hundred and forty-seven dollars and eighty cents, the amount of the personal estate of the said David W. Barnes, other than the moneys on deposit in savings banks. And deponent further says that a large part of the personal estate left by the said David W. Barnes was distributed among, and paid over to, the various parties entitled thereto, on the 8th day of July, 1896, and that the remainder of the said personal estate is on deposit in savings banks in the state of New York; and, as deponent is informed and advised by counsel, the administrators of David W. Barnes have no personal estate of the said David W. Barnes in their hands, subject to be assessed or taxed by the assessors or authorities of the town of Newcastle."

The assessors, notwithstanding this affidavit, continued the assessment as originally made; and, on the administrators refusing to pay the tax, the supervisor of the town of Newcastle brings this proceeding to compel the payment of the tax. This court, at a special term, after hearing argument, made an order directing the administrators to pay the tax which had been levied and assessed against them in their representative capacity, and from this order an appeal comes to this court.

It is now urged, in addition to the claim made before the board of assessors of the town of Newcastle, that the moneys on deposit in savings banks were exempt from taxation, and that—

"For the sake of convenience and expediency, and to relieve themselves from the cares of management, deponent [J. Wesley Barnes] and Richard P. Barnes agreed with Noah T. Barnes that said Noah T. Barnes should have sole control and possession of the assets and estate of said David W. Barnes, and should take the sole management of the estate property; deponent and Richard P. Barnes thereby ceasing to have any control or possession of the estate property, or to participate in any way, except to give advice, in the settlement of said estate. That in pursuance of said agreement, and prior to the 1st day of July, 1896. said Noah T. Barnes actually took and assumed the sole control and possession of the property of the said David W. Barnes, deceased; depositing the funds in banks in the name of Noah T. Barnes; drawing checks in the name of Noah T. Barnes; receiving moneys and paying indebtedness and transacting all the business of the estate in his own name, and by said agreement managing and controlling the entire estate, to the exclusion of deponent and Richard Barnes, who participated in no part of the control, possession, or management of said estate property. Deponent further says that on the said 1st day of July, 1896, he did not hold, nor has he since held or controlled, any personal property, as administrator aforesaid, of any kind or nature."

An affidavit in the same language is made by Richard P. Barnes. The language of the statute is that:

"Every person shall be taxed in the tax district where he resides when the assessment for taxation is made, for all personal property owned by him, or under his control as agent, trustee, guardian, executor or administrator." and "where taxable personal property is in the possession or under the control of two or more agents, trustees, guardians, executors or administrators residing in different tax districts, each shall be taxed for an equal portion of the value of such property so held by them." Section 8, c. 908, Laws 1896.

The learned trial court says, "In this case the defendants had control of the personal estate of their intestate, within the meaning of the statute;" and in this the court is entirely correct. The mere fact that one of the administrators, under an agreement, was permitted to transact the business of the estate, does not take it out of the control of the administrators. They were as much in control, under the

agreement, as though they had in fact participated. The very fact that they made an agreement is evidence that the property of the estate was within their control, and it did not pass beyond this control, so long as the property was administered within the limits of the contract or agreement between the administrators, no matter who may have had the personal possession of the property of the estate. "It must be regarded as a fair conclusion," say the court in the case of People v. Commissioners of Taxes, 38 Hun, 536, "from the application of the relators, that the absent executors failed only to have actual possession of the personal estate, and that during their absence. There is no evidence of any transfer of it to any other place, except what may be inferred from the circumstance that the foreign executor took possession. But this was a possession for the use of the estate and its beneficiaries, and in no sense deprived the other executors of that legal custody and possession resulting from their relation to it as executors and trustees. As said in Murray v. Blatchford, 1 Wend. 616, by Chief Justice Savage: 'If a man appoints several executors, they are esteemed in law but as one person, representing the testator, and therefore the acts done by any one of them, which relate either to the delivery, gift, sale, payment, possession, or release of the testator's goods, are deemed the acts of all, for they have a joint and entire authority.' It is contended, also, and the contention is justifiable, that, 'where the administration of the trust is vested in co-trustees, they all form, as it were, but one collective trustee, and therefore must execute the duties of the office in their joint capacity. It is not uncommon to hear one of several trustees spoken of as the acting trustee, but the court knows no such distinction. All who accept the office are, in the eye of the law, acting trustees.' Lewin, Trusts (7th Ed.) 236, and cases cited. See, also, Ridgeley v. Johnson, 11 Barb. 527; Thatcher v. Candee, 33 How. Prac. 145; Brinckerhoff v. Wemple, 1 Wend. 470. In addition to this, it must be said that the legal presumption is that the personal property of a decedent, during the settlement of the estate, is at the place where the decedent lived, unless the contrary affirmatively appears. Burrough, Tax'n, p. 224; Desty, Tax'n, p. 332, § 68. Indeed, it is a natural presumption as well." That was a case in which two of the executors resided in this state, while the third was a resident of the state of Ohio. The two executors in this state, through ill health, or a pressure of business, were obliged to leave the state, leaving the property in the control of the foreign executor. In the case at bar there was no relinquishment of the office of administrator,—no refusal to act,—but a joint agreement, under which one of the administrators undertook to discharge the duties of all of them, keeping the property within the joint control of the three by means of an agreement between themselves as to the manner in which the estate should be managed. In the case of People v. Commissioners of Taxes, 17 Hun, 293, it appeared that the testator lived and died in Westchester county, and that his will was admitted to probate there, that the personal property was located there, that four of the executors resided in that county, and that the property was in their physical possession. The effort on the part of the tax commissioners of the city of New York to tax this personal

estate in the hands of one of the executors, who exercised no active control over the property, was defeated. In the case at bar the assessors of the town in which the deceased lived and died have sought to levy a tax upon the proportion of the estate represented by the local administrators, and the facts do not warrant this court in deciding that the personal estate of the deceased was not within their control, within the fair meaning of the statute.

This brings us to the consideration of the question whether the original representations of the appellants to the board of assessors of the town of Newcastle were such as entitled them to have the assessment dropped from the rolls. It was contended that the personal estate of the deceased, being deposited in savings banks, was exempt from taxation, and this point is still urged upon the consideration of this court. We are unable to agree with this proposition. Section 3 of chapter 908 of the Laws of 1896 provides that "all real property within this state, and all personal property situated or owned within this state, is taxable, unless exempt from taxation by law." Subdivision 14 of section 4, which deals with exemptions, says:

"The deposits in any bank for savings which are due depositors, the accumulations in any domestic life insurance corporation, held for the exclusive benefit of the insured, other than real estate and stocks, now liable for taxation; and the accumulations of any incorporated co-operative loan association upon the shares of such association held by any person."

Does this constitute an exemption of the funds of individuals, deposited in a savings bank? If it does, then all that is necessary, to escape taxation of money as personal property, is to deposit it in a savings bank during the time that the assessors are at work, and, when they have finished, withdraw it. Clearly, this was never contemplated by the legislature. The policy of the law is to reach and tax as much personal property as possible, not to afford convenient hiding places for it during the time that the assessors are abroad; and, in order that each community may have the benefits of the taxation arising from the personal property (including money) owned or controlled by the people residing in the several tax districts, the aggregate deposits in savings banks which are due depositors are exempted from taxation in the tax district in which such savings banks are located, and it is thus left to bear that portion of taxation which the local assessors may deem just and equitable as between the various members of the tax district. "There is," say the court in the case of People v. Coleman, 135 N. Y., at page 236, 31 N. E. 1023, "no language indicating that it was meant to exempt the depositors from taxation upon their deposits. If, as claimed by the relator, the banks are exempted from taxation under the Revised Statutes, and, as claimed by others, the depositors are exempted from taxation on their deposits under this section, then an increasing amount of personal property in this state, now amounting to more than $600,000,000, will entirely escape taxation. There is certainly no public policy which dictates the entire exemption of this enormous amount of property; and the intention to exempt it, before the exemption can be allowed, should be found plainly expressed in some statute, and we do not find it. The depositors are taxable upon their deposits, as

they are upon other personal property, and the banks are exempt to the extent specified in the section." It is true, of course, that Judge Finch alone concurred in the opinion of Chief Judge Earl; the remaining judges concurring in the result on the ground that the shares of stock assessed were part of the bank's surplus, and they expressed "no opinion as to the taxation of depositors on account of their deposits in savings banks." But in the more recent case of People ex rel. Groton Sav. Bank v. Barker, 154 N. Y. 122, 47 N. E. 1103, Judge O'Brien, delivering the opinion of the court, says at page 125, 154 N. Y., and page 1104, 47 N. E.:

"By the fourth section of chapter 456 of the Laws of 1857, 'the deposits in any bank for savings which are due to depositors, and the accumulations in any life insurance company organized under the laws of this state, so far as the said accumulations are held for the exclusive benefit of the assured, shall not be liable to taxation, other than the real estate and stocks which may be owned by such bank or company, and which are now liable to taxation under the laws of the state.' Under this statute it was held in the case referred to [People v. Coleman, supra] that the deposits in savings banks were exempt from taxation against the bank."

This being conceded, the reasoning of Chief Judge Earl, concurred in by Judge Finch, in the Coleman Case, becomes unanswerable; and, while the question was not before the court for decision, it may be accepted with all of the deference due to the court from which it proceeds; and the incidental remark of Judge O'Brien in the Groton Savings Bank Case, supra, that "the so-called surplus is therefore within the equity of the statute exempting depositors of savings banks from taxation" (the remark being made in reference to a Connecticut statute), cannot be accepted as in any degree indicating that the court of appeals is in conflict with the dictum in the Coleman Case.

In the case at bar there is no question of the amount of property involved. It is practically conceded that the deceased left an estate, the personal property of which was equal to the amount assessed against it by the assessors of the township in which deceased lived at the time of his death, and in which two of his administrators still reside. We are of opinion that the assessors acted within the scope of their powers, and that the judgment of the court below, sustaining the action of the assessors of the town of Newcastle, and directing judgment against the administrators, should be affirmed, with costs.

Order affirmed, with $10 costs and disbursements. All concur.